**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ROBERT TOMASSINI**, *on behalf of himself and*
*all others similarly situated*,

                                        **Plaintiff,**

        **vs.**                                         **3:14-cv-1226**
                                                        **(MAD/DEP)**

**FCA US LLC,**

                                        **Defendant.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**LAW OFFICES OF ELMER**                **ELMER ROBERT KEACH, III, ESQ.**
**ROBERT KEACH III, P.C.**
One Pine West Plaza
Suite 109
Albany, New York 12205
Attorneys for Plaintiff

**PARKER WAICHMAN LLP**                 **JORDAN L. CHAIKIN, ESQ.**
27300 Riverview Center Boulvard         **PETER J. CAMBS, SR., ESQ.**
Suite 103
Naples, Florida 34134
Attorneys for Plaintiff

**WHITFIELD BRYSON &**                  **NICHOLAS A. MIGLIACCIO, ESQ.**
**MASON, LLP**
1625 Massachusetts Ave., NW
Suite 605
Washington, District of Columbia 20036
Attorneys for Plaintiff

**POPE & SCHRADER, LLP**                **ALAN J. POPE, ESQ.**
2 Court Street, 4th Floor
P.O. Box 510
Binghamton, New York 13902
Attorneys for Defendant

**THOMPSON COBURN LLP**                 **JOHN W. ROGERS, ESQ.**
One US Bank Plaza                       **KATHY A. WISNIEWSKI, ESQ.**
St. Louis, Missouri 63101               **STEPHEN A. D'AUNOY, ESQ.**
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff commenced this putative class action on September 8, 2014, alleging violations of New York General Business Law ("N.Y.G.B.L.") § 349 and breach of express warranty related to Defendant's use of metal alloy valve stems within the tire pressure monitoring system ("TPMS") on certain minivans. *See* Dkt. No. 1-1 at 2-32 ("Complaint"). Presently before the Court is Defendant's motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, to strike Plaintiff's class allegations. *See* Dkt. No. 7. Plaintiff has opposed Defendant's motion. *See* Dkt. No. 17.

## II. BACKGROUND[1]

In or about April 2012, Plaintiff purchased a used 2010 Town and Country minivan manufactured by Defendant ("the Minivan") from a wholesale dealer in New York. *See* Complaint at ¶¶ 9, 14. At the time of Plaintiff's purchase, the Minivan had approximately 37,000 miles on it. *Id.* at ¶ 14. The Minivan was equipped with a TPMS which reports real-time tire-pressure information to the Minivan's driver by utilizing pressure sensors that transmit pressure information to the vehicle's instrument cluster. *Id.* at ¶ 2. The Minivan's TPMS contained a metal alloy valve stem on each tire. *Id.* at ¶ 1.

When originally sold, the Minivan was covered by an express Limited Basic Warranty. *See id.* at ¶ 42. The Limited Basic Warranty contained a durational limitation which limited it to whichever occurred first of thirty-six months or 36,000 miles from the earlier of the date the original purchaser took delivery of the vehicle or the date the vehicle was first put into service.

---

[1] The factual background is derived from the allegations in Plaintiff's complaint, which are presumed to be true solely for the purposes of this motion.

*See id.*; Dkt. No. 7-3 at 8-9.  The Limited Basic Warranty was also limited in scope to "cover[ing] the cost of all parts and labor needed to repair any item on [the] vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation."  Dkt. No. 7-3 at 7.

On August 15, 2013, Plaintiff observed that the Minivan's left rear tire was rapidly losing air.  Complaint at ¶ 16.  At that time, the Minivan had approximately 47,000 miles on it.  *Id.* Plaintiff brought the Minivan to an automotive repair shop in Cherry Hill, New Jersey, where a mechanic determined that the valve stem on the Minivan's left rear tire had corroded to the point where it could no longer hold air in the tire.  *Id.*  Plaintiff paid the repair shop $128.35 to replace the valve stem.  *Id.*

On June 16, 2014, Plaintiff observed that the Minivan's right rear tire was losing air and brought the Minivan to an auto repair shop in Endicott, New York.  *Id.* at ¶ 17.  On that date, the Minivan had approximately 56,000 miles on it.  *Id.*  A mechanic at the repair shop determined that the tire valve stem had corroded and needed to be replaced.  *Id.*  Plaintiff paid the repair shop $13.50 to replace the metal alloy valve stem with a non-TPMS-compatible rubber valve stem.  *Id.*

Plaintiff sought reimbursement from Defendant for the expenses he incurred to replace the Minivan's two failed valve stems.  Complaint at ¶ 18.  Defendant refused to provide reimbursement.  *Id.*  Plaintiff also sought information from Defendant regarding the availability of a rubber TPMS-compatible valve stem and learned that no such part existed for the Minivan.  *Id.*

The National Highway and Traffic Safety Administration Office of Defects Investigation ("NHTSA-ODI") collects complaints from consumers regarding problems with their vehicles or vehicle equipment via its public website.  *See id.* at ¶ 20.  Since July 2009, the NHTSA-ODI has received almost one hundred and thirty complains pertaining to failed valve stems in model year

2008 through 2011 minivans manufactured by Defendant that are equipped with a TPMS. *See id.* at ¶ 23. Multiple complaints included allegations that the consumer directly contacted Defendant regarding the valve stem failures and was informed by Defendant that Defendant would not pay for or reimburse the consumer for the repairs. *See id.* at ¶¶ 24-25. Some consumers reported being informed by Defendant's dealerships that the valve stem failure was a common problem and experiencing repair delays because the replacement TPMS valve stems were on back order. *See id.* at ¶¶ 26-28. A number of consumers reported that the valve stem failure caused their tires to deflate instantly and without warning. *See id.* at ¶¶ 31-32, 35. Numerous consumers also reported that the failure of the valve stem destroyed their tires. *See id.* at ¶ 37.

In October 2010, Transport Canada opened an investigation into the failure of tire valve stems due to corrosion on vehicles including model year 2008-2009 Chrysler Town & Country minivans and 2008-2009 Dodge Caravans. *See id.* at ¶ 6. In 2011, Defendant changed the design of its TPMS valve stems from metal alloy to corrosion-resistant rubber material. *See id.* at ¶ 39.

On September 8, 2014, Plaintiff filed the instant class action complaint on behalf of himself and all others similarly situated in New York State Supreme Court, Broome County. Plaintiff defined the class which he seeks to represent as "[a]ll residents of the State of New York who purchased and/or leased the following Chrysler Minivans: (a) the 2008-2011 Chrysler Town & Country; and (b) the 2008-2011 Dodge Grand Caravan, which were first sold or leased as new vehicles on or after June 10, 2009." *Id.* at ¶ 45. Plaintiff's complaint alleges two causes of action: (1) unfair and deceptive trade practice in violation of N.Y.G.B.L. § 349 and (2) breach of express warranty. *See id.* at ¶¶ 55-81. Plaintiff seeks damages and "a declaratory judgment requiring [Defendant] to warn all purchasers and potential purchasers of Chrysler Minivans about the defective TPMS valve stems." *Id.* at ¶¶ 64-65, 81, 85.

4

Defendant removed the instant case to this Court on October 8, 2014, pursuant to the

Class Action Fairness Act codified at 28 U.S.C. § 1332(d)(2). *See* Dkt. No. 1. On October 15,

2014, Defendant moved to dismiss the complaint in its entirety for failure to state a claim upon

which relief can be granted or, in the alternative, to strike Plaintiff's class allegations. *See* Dkt.

No. 7.

## III. DISCUSSION

**A.      Failure to State a Claim**

### *1. Legal Standards*

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief and pleadings

without considering the substantive merits of the case. *See Global Network Commc'ns, Inc. v.

City of New York*, 458 F.3d 150, 155 (2d Cir. 2006). In considering the legal sufficiency, a court

must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the

pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)

(citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See

Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the

claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled

to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quoting Fed R. Civ. P.

8(a)(2)). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right

of relief above the speculative level," *Twombly*, 550 U.S. at 555, and present claims that are

"plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *id.* at 570.

### 2. *Unfair and Deceptive Trade Practice*

In Plaintiff's first cause of action, Plaintiff alleges that Defendant violated N.Y.G.B.L. § 349 by knowingly misrepresenting and intentionally omitting material information by failing to disclose the "known defects in the TPMS valve stem[s] and the known risks associated therewith" to consumers at the time of sale of Defendant's minivans and post-sale. Complaint at ¶ 60(a)-(b).[2] Plaintiff further alleges that Defendant engaged in deceptive acts and practices by

> advertising and selling a limited warranty while knowing that significant portions of the damages resulting from the known but concealed valve stem defect would not be revealed to the consumer until after coverage expired thereunder and that many of the defective valve stems would fail prematurely, but outside the warranty period

and "by replacing corroded valve stems with equally defective units and refusing to replace valve stems known to be defective until their actual failure." *Id.* at ¶ 60(d)-(e). In addition, Plaintiff alleges that Defendant engaged in materially misleading and deceptive acts by continuing to represent the merchantability of its minivans to the consuming public despite its knowledge of the valve stem defect. *Id.* at ¶ 60(f).

---

[2] Plaintiff also alleges that Defendant "forced Plaintiff and the Class Members to expend sums of money at its dealerships to repair and/or replace the defective valve stems and deflated tires," despite Defendant's alleged prior knowledge of the valve stem defect. Complaint at ¶ 60(c).

Defendant argues that Plaintiff has failed to state a claim for deceptive practices because Plaintiff did not plead facts sufficient to demonstrate that Defendant had prior knowledge of a valve stem defect. *See* Dkt. No. 7-1 at 14-16. Defendant additionally argues that Plaintiff's claim fails to the extent that it is premised on affirmative misrepresentations because Plaintiff failed to identify a specific false misrepresentation that caused him injury. *See id.* at 16-18. Defendant also contends that Plaintiff has failed to state an omission claim because Plaintiff cannot establish that Defendant had a duty to disclose any information to Plaintiff when he purchased the Minivan from a third-party dealer. *See id.* at 18-20.

N.Y.G.B.L. § 349 declares unlawful all "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). "[A]ny person who has been injured by reason of any violation of [§ 349] may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." *Id.* at § 349(h). "To successfully assert a section 349 (h) claim, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *City of N.Y. v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 621 (2009) (citation omitted); *see also Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) ("A § 349 claim has three elements: (1) the defendant's challenged acts or practices must have been directed at consumers, (2) the acts or practices must have been misleading in a material way, and (3) the plaintiff must have sustained injury as a result.") (citation omitted).

### a. Consumer-Oriented Conduct

"[P]arties claiming the benefit of [§ 349] must, at the threshold, charge conduct that is consumer oriented." *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 320 (1995). "The conduct need not be repetitive or recurring but defendant's acts or practices must have a broad impact on consumers at large; '[p]rivate contract disputes unique to the parties . . . would not fall within the ambit of the statute.'" *Id.* (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995)). "[C]onduct has been held to be sufficiently consumer-oriented to satisfy the statute where it involved 'an extensive marketing scheme,' where it involved the 'multi-media dissemination of information to the public,' and where it constituted a standard or routine practice that was 'consumer-oriented in the sense that [it] potentially affect[ed] similarly situated consumers.'" *N. State Autobahn, Inc. v. Progressive Ins. Group Co.*, 102 A.D.3d 5, 12 (2d Dep't 2012) (internal citations omitted).

Here, Plaintiff alleges that Defendant failed to disclose a known defect to potential and actual purchasers of its vehicles, along with other conduct directed at Defendant's minivan customers. Defendant does not dispute that Plaintiff has satisfied his threshold burden of charging consumer-oriented conduct, and the Court finds that Plaintiff's allegations clearly satisfy the first prong of the statute by alleging conduct that potentially affected a wide range of consumers.

### b. Materially Misleading Act or Practice

"A prima facie case [under § 349] requires . . . a showing that defendant is engaging in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof." *Oswego*, 85 N.Y.2d at 25 (citations omitted). "Whether a representation or an omission, the deceptive practice must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000) (quoting

*Oswego*, 85 N.Y.2d at 26). "[W]hether a deceptive practice is likely to mislead a reasonable

consumer acting reasonably may be determined as either a question of law or fact, depending

upon the circumstances." *Wilner v. Allstate Ins. Co.*, 71 A.D.3d 155, 166 (2d Dep't 2010) (citing

*Oswego*, 85 N.Y.2d at 26). "A deceptive practice . . . need not reach the level of common-law

fraud to be actionable under section 349." *Stutman*, 95 N.Y.2d at 29 (citing *Gaidon v. Guardian*

*Life Ins. Co.*, 94 N.Y.2d 330, 343 (1999)).

> [B]ecause § 349 extends well beyond common-law fraud to cover a
> broad range of deceptive practices, and because a private action
> under § 349 does not require proof of the same essential elements
> (such as reliance) as common-law fraud, an action under § 349 is
> not subject to the pleading-with-particularity requirements of Rule
> 9(b), Fed.R.Civ.P., but need only meet the bare-bones notice-
> pleading requirements of Rule 8(a), Fed.R.Civ.P.

*Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) (internal citations

omitted).

When the plaintiff's claim is based on an alleged omission by the defendant,

> the statute surely does not require businesses to ascertain
> consumers' individual needs and guarantee that each consumer has
> all relevant information specific to its situation. The scenario is
> quite different, however, where the business alone possesses
> material information that is relevant to the consumer and fails to
> provide this information.

*Oswego*, 85 N.Y.2d at 26; *see also Woods v. Maytag Co.*, No. 10-CV-0559, 2010 WL 4314313,

*15 (E.D.N.Y. Nov. 2, 2010) ("*Woods I*") ("[W]hen a defendant exclusively possesses

information that a reasonable consumer would want to know and could not discover without

difficulty, failure to disclose can constitute a deceptive or misleading practice." (citing *Oswego*,

85 N.Y.2d at 27)). "When the terms of a bargain are fully disclosed to the plaintiff prior to

acceptance, then there is no deceptive omission giving rise to a Section 349 claim." *Lebowitz v.*

*Dow Jones & Co.*, 508 Fed. Appx. 83, 85 (2d Cir. 2013) (citing *Lewis v. Hertz Corp.*, 181 A.D.2d

493, 494 (1st Dep't 1992); *Citipostal, Inc. v. Unistar Leasing*, 283 A.D.2d 916, 918 (4th Dep't 2001)).

In the present matter, Plaintiff's complaint vaguely references affirmative representations allegedly made by Defendant concerning the good working order and merchantability of Defendant's minivans. *See* Complaint at ¶¶ 60(f), 62. However, in response to Defendant's argument that Plaintiff failed to identify a specific deceptive representation underlying his claim under § 349, Plaintiff clarified that "his claim under GBL § 349 focuses on a material omission." Dkt. No. 17 at 14 n.6. Specifically, Plaintiff alleges that Defendant violated § 349 by failing to inform minivan purchasers that the metal alloy TPMS valve stems were defective, despite Defendant's knowledge of the defect.

Defendant argues that Plaintiff's deceptive omission claim fails because Plaintiff did not plead facts plausibly alleging that Defendant in fact possessed information that the valve stems were defective at the time of its alleged failure to disclose. In support of his claim that Defendant knew the Minivan's metal alloy valve stems were overly susceptible to corrosion and thus defective, Plaintiff points to the following: (1) Defendant's "own knowledge about the corrosion risks to car parts made from metal alloys that do not sufficiently resist corrosion;" (2) customer complaints to Defendant's dealerships and acknowledgments by Defendant's dealers of a recurring issue; (3) complaints filed with the NHTSA-ODI beginning in July 2009; (4) Transport Canada's investigation into a potential valve stem defect in Defendant's minivans opened in 2010; and (5) a comment on a *Tire Review* magazine blog post indicating that an unidentified "representative[] in the industry" had observed more valve stem corrosion on Defendant's vehicles than other brands. *See* Complaint at ¶¶ 6, 38.

As to Plaintiff's allegation that Defendant had prior knowledge of the corrosion risk of metal alloy parts, Plaintiff has pleaded no facts supporting its conclusory statement that Defendant possessed such knowledge. *See* Complaint at ¶ 19 ("[Defendant] knew from the time of manufacture that the TPMS valve stems were made out of metal alloys that could not sufficiently resist corrosion."). Standing alone, such an allegation would be insufficient to plausibly establish Defendant's knowledge of the alleged valve stem defect. In addition, the Court does not find the *Tire Review* reader comment cited by Plaintiff to be relevant to Defendant's knowledge of the alleged defect, as the source of the comment is unidentified, and nothing in the text of the comment suggests that the comment's author notified Defendant of the alleged prevalence of corroded valve stems on its vehicles.

However, Plaintiff's allegations that Defendant was notified of the alleged defect by its customers and dealerships, that Defendant's representatives described the valve stem failure as "common," and that the TPMS valve stems were on back order due to an influx of valve stem failures more plausibly suggest that Defendant knew its valve stems were defective. *See* Complaint at ¶¶ 24-28. For example, Plaintiff alleges that Defendant's representatives informed consumers with corroded TPMS valve stems that the valve stem failures were "a common occurrence" and "a common problem . . . on [D]odge [C]aravans," replacement valve stems "were on back order [because] there had been so many problems [that the dealership] couldn't keep up," and other consumers were having similar problems with the valve stems. *Id.* at ¶¶ 26-27. In *Woods v. Maytag Company*, 807 F. Supp. 2d 112 (E.D.N.Y. 2011) ("*Woods II*"), the court considered whether similar factual allegations were sufficient to withstand a motion to dismiss the plaintiff's claim under N.Y.G.B.L. § 349. In that case, the plaintiff's deceptive practice claim centered on the defendants' alleged failure to disclose or active concealment of a known defect in

a gas range oven. *See Woods II*, 807 F. Supp. 2d at 116. The plaintiff alleged that when his oven malfunctioned and caught fire, an authorized repairman sent by the defendants told the plaintiff that "he had addressed numerous other similar consumer complaints with respect to [the Oven]" and "was specifically told by his superiors not to generate a report indicating that the incident was caused by the gas igniter." *Id.* at 117 (internal quotation marks omitted). In addition, the repairman generated a work report indicating that the defendants instructed him to inform the plaintiff "to not proceed filing safety issue & personal injury." *Id.* The court found the repairman's statements and the work report to "constitute 'strong circumstantial evidence' that the Maytag Defendants had specific knowledge of a defect in the Oven's igniting mechanism." *Id.* at 126. Accordingly, the court concluded that the plaintiff had plausibly alleged that the defendants had knowledge of the purported defect and failed to disclose such defect, thereby satisfying the pleading requirement for a deceptive act or practice by omission under § 349. *See id.* at 128-29. The Court agrees with the *Woods II* court's analysis. Similarly, here, Plaintiff's allegations regarding statements by Defendant's dealers and the shortage of replacement TPMS valve stems constitute circumstantial evidence of Defendant's knowledge of the alleged valve stem defect.

Furthermore, the fact that nearly one hundred and thirty consumers filed complaints identifying the alleged defect with the NHTSA-ODI and the fact of Transport Canada opening an investigation into a potential valve stem defect in Defendant's minivans constitute additional circumstantial evidence of Defendant's knowledge. In a case similar to the instant case, *Doll v. Ford Motor Company*, 814 F. Supp. 2d 526 (D. Md. 2011), the plaintiff contended that the defendant knew the torque converters on its 2004 and 2005 Ford Freestar and Mercury Monterey vehicles were defective. The plaintiff argued that the defendant's knowledge of the defect could be plausibly inferred from the fact that thousands of vehicle owners had complained directly to

the defendant or its authorized dealers and the NHTSA's initiation of an investigation into a possible defect based on its receipt of 178 complaints of transmission failure in the defendant's vehicles. *See* 814 F. Supp. 2d at 534-35. The court agreed, finding the plaintiff's allegations sufficient to state a claim under multiple state consumer protection acts including N.Y.G.B.L. § 349. *See id.* at 545-47, 550.

In contrast, in *Woods I*, the court dismissed the plaintiff's omission claim under § 349 because the plaintiff "vaguely allege[d] that Defendants 'knew' of the alleged defect," without providing factual information that suggested the defendants had knowledge of the defect. *Woods I*, 2010 WL 4314313 at *16. Similarly, in *Weaver v. Chrysler Corporation*, 172 F.R.D. 96 (S.D.N.Y. 1997), the court found that the plaintiff had failed to plead a cause of action under § 349 because his allegations of the defendant's knowledge of an alleged defect were based solely upon "information and belief." 172 F.R.D. at 100.

The Court finds Plaintiff's pleadings in the present matter sufficiently factually specific to plausibly allege that Defendant knew of a valve stem defect in its minivans. As in *Woods II* and *Doll*, Plaintiff has pled facts specifically indicating that numerous consumers complained directly to Defendant, that Defendant's representatives acknowledged the defect as a common problem, that a governmental traffic safety organization initiated investigation into a potential defect, and that hundreds of consumers filed complaints with the NHTSA-ODI. Thus, rather than relying on mere statements alleging Defendant's knowledge "upon information and belief" like those rejected by the courts in *Woods I* and *Weaver*, Plaintiff's pleadings provide sufficient factual detail to plausibly allege Defendant's knowledge of the defect.

Defendant also argues that Plaintiff has not established that Defendant had a duty to disclose the existence of a defect. *See* Dkt. No. 7-1 at 18-19. This argument is unavailing

because a business's failure to disclose to consumers material, relevant information the business alone possesses is actionable under N.Y.G.B.L. § 349 without reference to any special relationship between the consumer and the business. *See Oswego*, 85 N.Y.2d at 26-27; *see also Wiseberg v. Toyota Motor Corp.*, No. 11-3776, 2012 WL 1108542, *6 (D.N.J. Mar. 30, 2012) (declining to dismiss plaintiff's § 349 claim against auto manufacturer based on manufacturer's failure to disclose allegedly known defect); *Szymczak v. Nissan N. Am., Inc.*, No. 10 CV 7493, 2011 WL 7095432, *16 (S.D.N.Y. Dec. 16, 2011) (finding plaintiffs stated a claim under § 349 by alleging that car manufacturer failed to disclose a known defect in its radiator systems).[3]

Defendant next argues that Plaintiff's omission claim fails because Plaintiff purchased the Minivan used from a wholesale dealer and has not identified "how or where [Defendant] was supposed to disclose information to him." Dkt. No. 7-1 at 19. However, "'[t]here is no requirement of privity [in N.Y.G.B.L. § 349], and victims of indirect injuries are permitted to sue under the Act.'" *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 175 F. Supp. 2d 593, 631 (S.D.N.Y. 2001) (quoting *Vitolo v. Dow*, 166 Misc. 2d 717, 724 (Sup. Ct. Richmond Cnty. 1995)). Furthermore, Defendant's reliance on *Szymczak* for the proposition that a purchaser of a used vehicle cannot plausibly state a deceptive omission claim under § 349 is misplaced. There, the court dismissed the § 349 *affirmative misrepresentation* claims of three plaintiffs who alleged

---

[3] Defendant also argues that under *Henry v. Rehab Plus Inc.*, 404 F. Supp. 2d 435 (E.D.N.Y. 2005), "an omission becomes a misrepresentation only in a situation in which it renders other statements made by a defendant misleading." Dkt. No. 7-1 at 19 (quoting *Henry*, 404 F. Supp. 2d at 445). As the court recognized in *Doll*, the *Henry* court extracted the proposition that an omission is only actionable where the plaintiff identifies a statement of the defendant made misleading by the omission from a case analyzing securities fraud claims, not claims brought under N.Y.G.B.L. § 349. *See Doll*, 814 F. Supp. 2d at 550 n.9. As this interpretation of the requirements of an omissions claim under § 349 runs contrary to the New York Court of Appeals' decision in *Oswego*, *see* 85 N.Y.2d at 27, the Court agrees with the *Doll* court that a plaintiff is not required to identify an affirmative statement made false by the defendant's alleged omission to state an actionable § 349 claim.

14

the defendant vehicle manufacturer misrepresented that the radiator and transmission systems of certain vehicles were in good working order and not defective because the plaintiffs did not purchase their vehicles directly from the manufacturer and did not "allege receipt of or exposure to the misleading practice or act." *Szymczak*, 2011 WL 7095432, at *15. As Plaintiff's claim here does not require exposure to a specific affirmative misrepresentation, the Court finds Defendant's argument unconvincing.

Based on the foregoing, the Court finds that Plaintiff's pleadings sufficiently allege that Defendant engaged in a materially misleading act or practice.[4]

### c. Injury

"[A] plaintiff must prove 'actual' injury to recover under [§ 349], though not necessarily pecuniary harm." *Stutman*, 95 N.Y.2d at 29 (citations omitted). "[W]hile the statute does not require proof of justifiable reliance, a plaintiff seeking compensatory damages must show that the defendant engaged in a material deceptive act or practice that caused actual, although not necessarily pecuniary, harm." *Oswego*, 85 N.Y.2d at 26. "The plaintiff . . . must show that the defendant's 'material deceptive act' caused the injury." *Stutman*, 95 N.Y.2d at 29 (quoting *Oswego*, 85 N.Y.2d at 26).

---

[4] Defendant argues for the first time in its reply brief that Plaintiff should be charged with having knowledge of the valve stem defect because the NHTSA-ODI complaints and notice of the Transport Canada investigation are publicly available. *See* Dkt. No. 19 at 8-9. Defendant contends that Plaintiff's pleadings therefore do not adequately allege that Defendant alone possessed information regarding the defect. *See id.* The Court declines to consider this argument, as "[a]rguments made for the first time in a reply brief need not be considered by a court." *Playboy Enters., Inc. v. Dumas*, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997) (citations omitted); *see also Zeigler v. New York*, 948 F. Supp. 2d 271, 285-86 (N.D.N.Y. 2013) (declining to consider an argument raised for the first time in the defendant's reply brief "because if [a party] raises a new argument in a reply brief [the opposing party] may not have an adequate opportunity to respond to it." (quoting *In re Harris*, 464 F.3d 263, 268 n.3 (2d Cir. 2006)) (internal quotation marks omitted)).

Defendant does not dispute that Plaintiff has adequately pleaded injury caused by Defendant's alleged pre-sale omissions regarding the valve stem defect. However, Defendant contends that to the extent Plaintiff's § 349 claim is premised on a post-sale failure to disclose the defect, Plaintiff has failed to articulate an injury caused by this failure. *See* Dkt. No. 7-1 at 19-20; Dkt. No. 19 at 10. Plaintiff contends that he has pleaded two actual injuries: (1) purchasing the Minivan or paying more for it than he would have had he known of the defect and (2) expending money to replace the defective valve stems. *See* Dkt. No. 17 at 18-19. Plaintiff's first alleged injury is clearly not causally linked to Defendant's alleged post-sale omissions, as any post-sale disclosure of the valve stem defect could not affect Plaintiff's prior decision to purchase the Minivan at its given purchase price.

As to Plaintiff's costs incurred to repair the valve stems, Defendant asserts that "even if [it] had told Plaintiff the day after he purchased his vehicle that its valve stem might fail, that disclosure would not have changed the fact that he had to pay for a repair." Dkt. No. 19 at 10. However, Plaintiff asserts that to the extent Defendant became aware of the defect post-sale, Defendant's deceptive conduct included failing to recall the defective parts, replace the defective valve stems voluntarily, or reimburse owners for the costs incurred to replace the defective stems. Thus, by refusing to acknowledge the defect, Defendant caused Plaintiff to incur repair costs that ought to have been incurred by Defendant. This alleged injury is sufficiently causally related to Defendant's alleged post-sale omissions to satisfy the causation element of Plaintiff's § 349 claim based on post-sale failure to disclose. *See Doll*, 814 F. Supp. 2d at 550 (finding that the plaintiffs satisfied the actual injury element of their § 349 claim by pleading high repair and replacement

costs caused by the defendant's withholding of information regarding a defective torque converter).[5]

As the Court has found Plaintiff's allegations sufficient to satisfy each element of a claim pursuant to N.Y.G.B.L. § 349 on a failure to disclose theory, the Court denies Defendant's motion to dismiss Plaintiff's deceptive omissions claim. As Plaintiff has identified no specific affirmative misrepresentation underlying his § 349 claim, the Court grants Defendant's motion to dismiss Plaintiff's affirmative misrepresentation claim.

### 3. Breach of Express Warranty

In Plaintiff's second cause of action, Plaintiff alleges that Defendant violated the Limited Basic Warranty by refusing to repair or replace Plaintiff's failed valve stems. *See* Complaint at ¶ 80. Pursuant to § 2-313 of the New York Uniform Commercial Code, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." N.Y. U.C.C. § 2-313(1)(a). Thus, "[i]n order to demonstrate that an express warranty was created under New York law, a plaintiff 'must prove that the statement falls within the definition of a warranty, that she relied on it, and that it became part of the basis for the bargain.'" *Kraft v. Staten Island Boat Sales, Inc.*, 715 F. Supp. 2d 464, 473 (S.D.N.Y. 2010) (quoting *Daley v. McNeil Consumer Prods. Co.*, 164 F. Supp. 2d 367, 377 (S.D.N.Y. 2001)); *see also Warren W. Fane, Inc. v. Tri-State Diesel, Inc.*, No. 1:12-cv-1903, 2014 WL 1806773, *7 (N.D.N.Y. May 7, 2014) ("To prevail on an express warranty claim, a Plaintiff must 'show that there was an "affirmation of fact or promise by the seller, the natural tendency of which [was] to induce the

---

[5] Section 349 also provides for statutory damages of fifty dollars for an injured plaintiff that fails to prove actual damages exceeding fifty dollars. *See* N.Y. Gen. Bus. Law § 349(h).

buyer to purchase" and that the warranty was relied upon[.]'" (quoting *Schimmenti v. Ply Gem Indus., Inc.*,156 A.D.2d 658, 659 (2d Dep't 1989))).

Defendant argues that Plaintiff cannot assert a breach of express warranty claim based on the Limited Basic Warranty because it expired before Plaintiff purchased the Minivan, and therefore was not part of the basis of the bargain. *See* Dkt. No. 7-1 at 20-21. Plaintiff concedes that the Limited Basic Warranty expired before he purchased the Minivan. *See* Dkt. No. 17 at 26. Plaintiff nonetheless argues that he has adequately pled the existence of an express warranty because at the time he purchased the Minivan, it was covered by other warranties within the larger Factory Warranty, including a corrosion warranty, outer-body corrosion warranty, powertrain warranty, and emissions warranty. *See id.* This argument is unavailing because Plaintiff's breach of express warranty claim specifically relies upon the terms of the Limited Basic Warranty. *See* Complaint at ¶¶ 66-81. The existence of other warranties is irrelevant in light of Plaintiff's failure to assert claims under any warranty other than the Limited Basic Warranty. Plaintiff cannot dispute that the representations in the Limited Basic Warranty were not part of the basis of Plaintiff's purchase of the Minivan and that he could not have conceivably relied upon an expired warranty in purchasing his vehicle. *See Perez v. Volkswagen Group of Am., Inc.*, No. 2:12-CV-02289, 2013 WL 1661434, *4 (W.D. Ark. Apr. 17, 2013) (finding that the plaintiff failed to state a breach of express warranty claim under Arkansas law, which requires the plaintiff to have relied on the warranty as part of the basis of the bargain, where the plaintiff became the owner of a vehicle after the applicable warranty expired).

In light of the fact that Plaintiff was never a party to or beneficiary of the Limited Basic Warranty, Plaintiff also lacks standing to challenge the time and durational limitations of the Limited Basic Warranty as unconscionable. *See In re Ford Motor Co., Spark Plug & 3-Valve*

*Engine Prods. Liab. Litig.*, No. 1:12-md-2316, 2014 WL 3778592, *35-36 (N.D. Ohio July 30, 2014) (concluding that a group of plaintiffs that purchased their vehicles after the expiration of a limited warranty did not have standing to claim that the warranty period was unconscionable); *Perez*, 2013 WL 1661434, at *5 (finding that a plaintiff who purchased a vehicle after its warranty expired had no standing to argue that the warranty was unconscionable).  Morever, the Second Circuit expressly rejected the argument – advanced here by Plaintiff – that a defect discovered outside the time or mileage limitations of a written warranty may be the basis of an express warranty claim if the warrantor knew of the defect at the time of sale in *Abraham v. Volkswagen of America, Inc.*, 795 F.2d 238, 249-50 (2d Cir. 1986).  Holding that the plaintiffs could not state an express warranty claim for defects that did not manifest themselves until after expiration of the time or mileage limitations in the relevant warranties, the Second Circuit explained that

> virtually all product failures discovered in automobiles after expiration of the warranty can be attributed to a "latent defect" that existed at the time of sale or during the term of the warranty.  All parts will wear out sooner or later and thus have a limited effective life.  Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time.  Such knowledge is easily demonstrated by the fact that manufacturers must predict rates of failure of particular parts in order to price warranties and thus can always be said to "know" that many parts will fail after the warranty period has expired.  A rule that would make failure of a part actionable based on such "knowledge" would render meaningless time/mileage limitations in warranty coverage.

*Abraham*, 795 F.2d at 250.

Consequently, Plaintiff has failed to state a claim for breach of express warranty.  The Court therefore grants Defendant's motion to dismiss Plaintiff's second cause of action.

### 4. Equitable Relief

In Plaintiff's third cause of action, entitled "declaratory relief," Plaintiff seeks equitable relief pursuant to N.Y.G.B.L. § 349.  *See* Complaint at ¶¶ 82-85.  Specifically, Plaintiff "seeks a declaratory judgment requiring [Defendant] to warn all purchasers and potential purchasers of Chrysler Minivans about the defective TPMS valve stems."  *Id.* at ¶ 85.

Although Plaintiff characterizes his request as one for a "declaratory judgment," a declaratory judgment merely declares the rights of parties to a dispute.  *See* 28 U.S.C. § 2201(a) (defining the federal courts' jurisdiction to issue declaratory judgments "declar[ing] the rights and other legal relations of any interested party seeking such declaration").  Plaintiff's request that the Court require Defendant to warn purchasers of the alleged defect is properly categorized as a request for injunctive relief, as the relief sought requires Defendant to take affirmative action. N.Y.G.B.L. § 349 provides that "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions."  N.Y. Gen. Bus. Law § 349(h).  As the "unlawful act or practice" Plaintiff alleges is Defendant's failure to disclose the valve stem defect, Plaintiff's request that Defendant disclose the defect is a proper request to enjoin Defendant's unlawful action under N.Y.G.B.L. § 349(h).

To the extent that Plaintiff seeks "a declaratory judgment related to the breach of express warranty claim," Complaint at ¶ 81, as stated *supra* Section III.A.3, Plaintiff has failed to state a cognizable express warranty claim.  As Plaintiff is not "an interested party" in the dispute over whether the Limited Basic Warranty covers the alleged valve stem defect, Plaintiff cannot assert a claim for declaratory judgment under the express warranty.  *See In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) ("[A] court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief.");  *Spiteri v. Russo*, No. 12-CV-2780,

2013 WL 4806960, *19 n.30 (E.D.N.Y. Sept. 7, 2013) ("A plaintiff cannot maintain a claim for a declaratory judgment where the underlying substantive claim has been dismissed since the Declaratory Judgment Act ("DJA") only created a procedural mechanism and not an independent cause of action.").

Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's claim for equitable relief to the extent that Plaintiff seeks a declaratory judgment pertaining to the Limited Basic Warranty and denies the motion to the extent that Plaintiff seeks injunctive relief pursuant to N.Y.G.B.L. § 349(h).

**B.      The Class Allegations**

Defendant also moves to strike the class allegations in the complaint based on the inclusion in the class of vehicle owners who did not suffer a valve stem failure.  *See* Dkt. No. 7-1 at 26-28.  Plaintiff argues that Defendant's motion to strike is procedurally premature and substantively without merit.  *See* Dkt. No. 17 at 29-30.

Rule 23 of the Federal Rules of Civil Procedure provides that in conducting a class action, the court may issue an order that "require[s] that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."  Fed. R. Civ. P. 23(d)(1)(D).  Within the Second Circuit, "a motion to strike class claims is considered premature if the issues raised are 'the same ones that would be decided in connection with determining the appropriateness of class certification under Rules 23(a) and 23(b) [of the Federal Rules of Civil Procedure].'"  *Kassman v. KPMH LLP*, 925 F. Supp. 2d 453, 464 (S.D.N.Y. 2013) (quoting *Rahman v. Smith & Wollensky Rest. Group, Inc.*, No. 06 Civ. 6198, 2008 WL 161230, *3 (S.D.N.Y. Jan. 16, 2008)) (other citations omitted).  However, "a motion to strike that addresses issues 'separate and apart from the issues that will be decided on a class certification

motion' is not procedurally premature." *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (quoting *Rahman*, 2008 WL 161230, at *3). "'A motion to strike class allegations . . . is . . . disfavored because it requires a reviewing court to "preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification."'" *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384, 404 (W.D.N.Y. 2010) (quoting *Francis v. Mead Johnson & Co.*, No 10-CV-701, 2010 WL 3733023, *1 (D. Colo. Sept. 16, 2010)).

Defendant argues that the members of the proposed class that have not suffered a valve stem failure on their vehicles do not have standing to pursue claims against Defendant. *See* Dkt. No. 7-1 at 26-28; Dkt. No. 19 at 14. Defendant further argues that the class allegations should therefore be stricken because "'no class may be certified that contains members lacking Article III standing.'" Dkt. No. 19 at 14 (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006)). Although the Court agrees with the proposition that a class cannot be certified where its members lack standing, the issue of class certification is not presently before the Court, and the Court finds no reason to depart from the usual class certification procedure to allow Defendant to argue an issue generally best resolved at the class certification stage. *See, e.g.*, *Denney*, 443 F.3d at 263-68 (resolving issue of class member standing in context of class certification motion); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 854-55 (6th Cir. 2013) (addressing a similar argument regarding the standing of class members who had not experienced an alleged defect in washing machines in the context of class certification and the typicality requirement of Fed. R. Civ. P. 23); *Blessing v. Sirius XM Radio Inc.*, 756 F. Supp. 2d 445, 450-51 (S.D.N.Y. 2010) (declining to address issue of standing of unnamed class members at motion to

dismiss stage because "[t]he better course . . . [was] to let the claims go forward and see what happens on the motion for class certification" and noting that the crucial inquiry at the motion to dismiss stage was "that 'each of the named plaintiffs has standing to bring at least some claims'" (quoting *In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363, 377 (S.D.N.Y. 2002))); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) (resolving class certification issues prior to reaching standing issues where the class certification issues were "logically antecedent" to Article III concerns); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612 (1997) (approving of Third Circuit's declining to resolve standing issue that "would not exist but for the [class-action] certification" until after resolution of class certification issue (internal quotation omitted)); *Blessing*, 756 F. Supp. 2d at 451 ("While the Second Circuit has not directly addressed the issue, there has been a growing consensus among district courts that class certification is 'logically antecedent[]' where its outcome will affect the Article III standing determination, and the weight of authority holds that in general class certification should come first."); *cf. Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 65 (2d Cir. 2012) ("[W]e think the Court's 'logical antecedence' language is relevant when resolution of class certification obviates the need to decide issues of Article III standing. We do not read it . . . as instructing courts to always treat class certification first and to treat the class as the relevant entity for Article III purposes.").

Accordingly, the Court denies Defendant's motion to strike the class allegations in the complaint.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss is **GRANTED in part** and **DENIED in**

**part**; and the Court further

    **ORDERS** that Plaintiff's affirmative misrepresentation claim pursuant to N.Y.G.B.L. §

349 and breach of express warranty claim are **DISMISSED** with prejudice;[6] and the Court further

    **ORDERS** that Defendant's motion to strike the class allegations is **DENIED**; and the

Court further

    **ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on all parties in accordance with the Local Rules.[7]

**IT IS SO ORDERED.**

Dated: June 23, 2015
      Albany, New York

                          Mae A. D'Agostino
                          U.S. District Judge

---

   [6] Although Plaintiff has not sought leave to amend his complaint, the Court notes that amendment would be futile.  It is clear that even if granted an opportunity to amend, Plaintiff cannot plead facts establishing that he relied on the Limited Basic Warranty in his purchase of the Minivan.  *See Oneida Indian Nation of N.Y. v. City of Sherrill*, 337 F.3d 139, 168 (2d Cir. 2003), *rev'd on other grounds*, 544 U.S. 197 (2005) (holding that "amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)").

   [7] As a result of this Memorandum-Decision and Order, the only claims remaining are Plaintiff's deceptive omission claim and claim for injunctive relief pursuant to N.Y.G.B.L. § 349.