UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT TOMASSINI, on behalf of himself and others similarly situated,<br><br>                Plaintiff,<br><br>vs.<br><br>CHRYSLER GROUP LLC (n/k/a FCA US LLC),<br><br>                Defendant. | Case No. 3:14-cv-01226-MAD-DEP<br><br>Hon. Mae A. D'Agostino<br>United States District Judge |

**FCA US LLC'S REPLY IN SUPPORT OF ITS
MOTION TO EXCLUDE THE REPORTS AND TESTIMONY
OF PLAINTIFF'S EXPERTS**

**POPE, SCHRADER & POPE, LLP**
Alan J. Pope
apope@psplawfirm.com
Bar Enroll No. 301508
2 Court Street, 4th Floor
P.O. Box 510
Binghamton, New York 13902
Phone: (607) 584-4900

**THOMPSON COBURN LLP**
Kathy A. Wisniewski
kwisniewski@thompsoncoburn.com
Sharon B. Rosenberg
srosenberg@thompsoncoburn.com
Stephen D'Aunoy
sdaunoy@thompsoncoburn.com
One US Bank Plaza
St. Louis, Missouri 63101
(314) 552-6000
(314) 552-7000 (fax)

*Attorneys for FCA US LLC*

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ............................................................................................................1

II.  ARGUMENT....................................................................................................................2

    A.   Sullivan, Lynch And Pinsonneault Are Unqualified. ............................................2

    B.   The Proffered Engineering Opinions Are Not Reliable. ........................................4

    C.   The Proffered Damage Opinions Are Not Helpful.................................................8

    D.   The Proffered Damage Opinions Are Not Reliable................................................9

III. CONCLUSION................................................................................................................10

## I. INTRODUCTION

FCA US LLC has outlined a host of deficiencies with Plaintiff's proffered experts. Plaintiff's only response to many of these is that FCA US's contentions go to the "weight" of the opinions instead of their "admissibility."[1] Courts do recognize that some quibbles over an expert's qualifications or methodologies are so minor as to not call into question whether an expert is actually qualified, or whether an expert's opinions are actually reliable. That, however, is not the case here.

Plaintiff is proffering experts who have *no* relevant experience with the components and damages issues they are opining about. Furthermore, his engineering experts proffer opinions about numerous different valve stems in thousands of different vehicles, declaring that they are all identically defective and certain to fail with disastrous consequences, all without having conducted a single test on any version of a valve stem, without knowing the actual in-service experience of a single failed valve stem, relying on documents for which they know nothing about the valves stems discussed in them, and while, at the same time, ignoring all documents and testing that squarely contradict their opinions as to at least some versions of the valve stems. Plaintiff's damages experts have done even less and provide even less support for their opinions, repeatedly relying on each other to provide necessary foundational support (which is not provided), and then, instead of offering an actual methodology that can be investigated, analyzed and tested, they ask this Court to blindly accept their assurances that they will, at some later date, proffer a reliable damages calculation. These are not matters of weight; these are matters of

---

[1] *See, e.g.,* Plaintiff's Opposition To Defendant's Motion To Exclude The Reports And Testimony Of Plaintiff's Experts, Doc. No. 220, ("Pl. Opp."), p. 6.

keeping junk science out of the courts and not allowing a massive class to be certified based on opinions that are based on nothing more than pure speculation. Plaintiff has failed to carry his burden to show that the opinions proffered by his five experts satisfy the requirements of Fed.R.Evid. 702 and *Daubert*.

## II. ARGUMENT

### A.     Sullivan, Lynch And Pinsonneault Are Unqualified.

***Sullivan:*** Plaintiff devotes almost two pages of his Opposition setting forth seemingly everything Sullivan has done in his professional career. *See* Pl. Opp., pp. 4-5. Notably absent, however, is any mention of a TPMS valve stem. *Id.* FCA US has never disputed that Sullivan is a trained metallurgist; but, that does not make him qualified to testify about every product made of any type of metal. Indeed, the Second Circuit requires that an expert be "qualified" in "the ***specific*** technical or specialized area at issue." *See, e.g., Bourassa v. Black & Decker (U.S.) Inc.*, 2015 WL 4715250, *3 (N.D.N.Y. 2015) (emphasis added).

This Court's decision in *Cruz v. Kuhmo Tire Co.*, 2015 WL 2193796 (N.D.N.Y. 2015) undercuts, rather than supports, Plaintiff's argument that one can be qualified as an "expert in everything." Indeed, the proffered expert was allowed to opine about tire defects in that case because he had worked for twelve years as an engineer for BF Goodrich Co. (a tire company), had actually "designed passenger car tires," and had "analyze[d] thousands of failed tires." *Id.* at *6. Here, by contrast, Plaintiff can point to nothing in Sullivan's past that involved design, analysis or testing of TPMS components, valve stems, or anything remotely similar.

***Lynch:*** Plaintiff sets forth a litany of projects Lynch has worked on; but, like Sullivan, there is a noticeable absence of anything involving a single TPMS valve stem. Pl. Opp., p. 8. And, Plaintiff makes no effort to justify the fact that Lynch is so unfamiliar with TPMS valve stems that he had to purchase a generic version just to see what one looked like. FCA US does

- 2 -

not dispute that Lynch is a trained metallurgist, but no law supports the notion that an expert who has *zero* familiarity with a component is qualified to offer broad ranging opinions that multiple different versions of the component are subject to inevitable failures with specific consequences. *Cf. Rizzo v. Applied Materials, Inc.*, 2017 WL 4005625, at *8 (N.D.N.Y. 2017) ("[i]t is hardly the hallmark of expertise to conduct a survey of medical literature just before testifying and to rely on articles up to then unknown or unread by the expert.") (internal quotations omitted).

Furthermore, Plaintiff's reliance on *Derienzo v. Trek Bicycle Corp.*, 376 F.Supp.2d 537 (S.D.N.Y. 2005) misses the mark since the expert in that case was opining about the outcome of tests he had personally performed on a failed bicycle. *Id.* at 554. That avenue of argument is, of course, closed to Lynch, who freely admits that even after submitting his report the "generic" TPMS component he purchased was as close as he ever came to analyzing the components he seeks to opine about here. *See* ECF #218-2, Lynch Depo, pp. 19-20.

***Pinsonneault:*** Plaintiff's defense of Pinsonneault's qualifications boils down to a claim that conjoint analysis is a "subdiscipline" of "economics." Pl. Opp., pp. 6-7. But, Plaintiff nowhere explains how Pinsonneault is qualified in this "subdiscipline." *Id.* Clearly a radiologist is not qualified to perform heart surgery simply because he/she is under the umbrella of the medical "discipline." And, here, rather than proffer some affirmative evidence that Pinsonnault is qualified in the conjoint "subdiscipline," the best he can do is claim that Pinsonneault's demonstrated unfamiliarity with the fundamental principles of conjoint at deposition was due to "confusion." *Id.* at p. 7 fn. 4.[2] Worse yet, Plaintiff nowhere explains how Pinsonneault can even

---

[2]The *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 45 F.Supp.3d 724 (N.D.Ohio 2014) case relied on by Plaintiff only highlights Pinsonneault's shortcomings; there

be qualified as an economist expert given that his only "experience" in this area is his history of working with other "experts" in litigation. Plaintiff's only other argument about why Pinsonneault is qualified to opine about conjoint and the automotive market – that "the experts whose opinions [he] critiques have no such expertise" (*id.* at p. 7) – is misleading, at best, since FCA US is challenging Pinsonneault's qualifications to proffer his affirmative class certification opinions, which have nothing to do with his "critiques."

B.      **The Proffered Engineering Opinions Are Not Reliable.**

***Sullivan's and Lynch's "Defect" Opinions:*** Plaintiff argues that Sullivan can provide reliable opinions because he examined "samples" under a microscope and "confirm[ed] that the stems were made of Series 2000 aluminum alloy." Pl. Opp., pp. 9-10. But, neither assertion is true. Sullivan looked at just *one* sample of a used TPMS device under a microscope, and he admits he knows nothing about that sample: he does *not* know what type of aluminum alloy it was made of, what heat treatment it received, anything about its use, history, or what it was exposed to, or even whether it was altered or cleaned before he looked at it. *See* ECF #218-1, Sullivan Depo, pp. 55-57, 161-66, 194, 204-11.

Plaintiff also argues that Sullivan's opinions are reliable because they were "confirmed" by his review of documents. Pl. Opp., pp. 9-10. Plaintiff points to emails, an internal analysis, lab reports, and customer complaints, all of which he claims Sullivan reviewed. *Id.* But, it is noteworthy that Plaintiff completely ignores Sullivan's many admissions about those documents, like the fact that he knows nothing about the valve stems discussed in them. *See, e.g.,* ECF

---

the proffered expert was a distinguished Stanford professor who had actually taught and published on conjoint analysis. *Id.* at 756.

#218-1, Sullivan Depo., pp. 187, 189-93. And, Plaintiff completely ignores the fundamental problem with Sullivan's claim that certain documents support his broad "every valve stem is defective" opinion, which is that he outright admits that the valve stems at issue were manufactured from "multiple" different alloys with "various" heat treatments; and, he knows that "***some of those alloy heat treatment combinations will be more susceptible to [SCC] than other[s]***". *Id.* at pp. 210-11, 266 (emphasis added). Thus, a document that concerns SCC in a valve stem with a 2030 series alloy with a T6 heat treatment says nothing about the susceptibility to corrosion of a valve stem with a 2011 series alloy with a T4 heat treatment, or any other version.

Plaintiff nowhere addresses the glaring disconnect that exists between Sullivan's "all valve stems are defective" opinion and the fact that Sullivan never made any effort to determine what version of the valves stems he was looking at, or what version of valves stems were being discussed in documents he relies on. Sullivan's completely bald, and false, claim that all of the valve stems were identically defective and certain to fail cannot be justified when Sullivan himself acknowledged differences, and admits he did nothing to determine what differences actually existed or how they would affect susceptibility to corrosion (though he is sure the differences would). *See, e.g., Grodzitsky v. Am. Honda Motor Co.*, 2015 WL 2208184, at *5 (C.D. Cal. 2015). It is hard to imagine that an opinion could be any more unscientific or unreliable. And, instead of explaining how Sullivan's methodology could ever be reliable, Plaintiff attempts to keep up a charade that all valve stems were the same by referring to every valve stem as a "Series 2000 alloy" and ignoring the differences that actually exist as evidenced in the documents.

Furthermore, no law supports Plaintiff's proffered notion that an expert can conduct no meaningful testing, and merely look at a manufacturer's "internal documents" as a substitute for employing a reliable scientific methodology. Pl. Opp., p. 11. Indeed, Plaintiff's own cited cases confirm the insufficiency of this argument. *See, e.g., Jarvis v. Ford Motor Co.*, 1999 WL 461813, *5 (S.D.N.Y. 1999) (rejecting opinions as "highly suspect" because expert failed to show that his own testing "accurately reflects the effect of [the defect] in an actual automobile," despite his reliance on some of Ford's documents). Lastly, Plaintiff's suggestion that this Court has previously allowed speculation to masquerade as expert testimony is pure fantasy. *See Cruz*, 2015 WL 2193796, at *5.

As for Lynch, Plaintiff argues he "did far more than simply read documents and think about the case." Pl. Opp., p. 15. But, when it comes to actually identifying what that "far more" is, the only additional element of Lynch's supposed methodology identified is that he "reviewed photographs." Plaintiff nowhere explains why Lynch never looked at any components, which every engineering expert admits would be a critical step in any analysis. And, his methodology of reviewing documents and photographs is, like Sullivan's, permeated with errors and speculation because he too was unable to state what versions of valve stems were actually being discussed in the documents or photographs he relied upon. By way of example, Plaintiff now argues "Lynch observed pictures of corrosion on at least ten TPMS components before he concluded that the Class Vehicles suffered from corrosion." Pl. Opp., p. 17. But, Plaintiff misses the point that Lynch never confirmed that the pictures were from class vehicle valve stems before making this speculative conclusion. *See, e.g.,* ECF #218-2, Lynch Depo., p. 183.

Plaintiff attempts to justify Lynch's failure to look at, analyze, or test the vehicles and valve stems he seeks to opine about by arguing that Lynch reviewed testing "involving over

2,500 TPMS components." Pl. Opp., pp. 16, 19. This argument could be no more bizarre when one considers that 2,510 of those valve stems were involved in the single test that showed no evidence of SCC in TPMS valve stems where the valve stem caps were properly used and valve cores properly tightened. The other testing Plaintiff refers to includes the two valve stems looked at by Sullivan, which Plaintiff argues Lynch can rely on as the work of other experts. *See* Pl. Opp., p. 16-17. But, no law supports the notion that an expert can rely on the work of another where the expert does nothing to check, confirm, or validate the methods or results obtained. Here, Lynch never bothered to learn even the most basic facts about Sullivan's work, such as how many TPMS valve stems Sullivan had actually examined (ECF #218-2, Lynch Depo., pp. 135), whether they came from the same or different vehicles (*id.* at p. 183), or anything about their history (*id.* at pp. 183-84). Lynch believed that Sullivan had examined at least *six* TPMS valve stems, and that the two pictured in Sullivan's report were both determined by Sullivan to be made from a 2030 aluminum alloy with a T4 heat treatment. *Id.* at p. 135; 183. But, Sullivan admits he actually just "looked at" *two* TPMS valve stems, examined *one* under a microscope, and still does not know what alloy or heat treatment was used in their manufacture. *See* ECF #218-1, Sullivan Depo., pp. 55-57, 165-66, 210-11. That is far from a reliable methodology.

**Sullivan's and Lynch's Other Opinions:** Plaintiff does nothing to justify Sullivan or Lynch's opinions that the valve stems present a "widespread" or "common" problem. Plaintiff does not dispute that neither expert knows the number of vehicles at issue, distribution of valve stems versions, or the complaint or failure rate for any version. *See generally* Pl. Opp. Plaintiff does proffer an argument that Lynch relies on FCA US's "*projected* rate of failure" (*id.* at p. 18); but, Lynch never ties the projected rates to the vehicles at issue, and he could not since they involved a host of vehicles and valve stems not at issue in this case. Furthermore, it is

inexplicable, and categorically unreliable, that an expert would rely on years-old projections when actual data is available.

Plaintiff offers essentially no argument to justify Lynch's "safety" opinions. What Plaintiff says is that the same documents that support McClellan's opinions support Lynch's opinions. *See* Pl. Opp., p. 24. The problem is that the documents Plaintiff points to do not actually support either expert's opinions, and despite FCA US raising this issue in its opening brief, Plaintiff does nothing to explain how the documents actually do provide support.

**McLellan's Opinions:** Plaintiff does not dispute that McLellan spent only five hours on this case, did no testing or other data collection, and that there is no data underlying his opinions. Pl. Opp., pp. 21-24. Plaintiff argues, repeatedly, that McLellan's opinions should be admitted simply because they combine real world and professional "experience." *Id.* But, Plaintiff never explains what those "experiences" are. Nowhere does Plaintiff describe McLellan's supposed "professional" experience with TPMS valve stem failures, or valve stem failures on the minivans at issue. *Id.* Nor, is there any explanation what "real world" experiences supposedly support McLellan's opinions. *Id.* Plaintiff refers to NHTSA complaints, but those do not support the notion that there is a safety defect, and Plaintiff cannot seriously be contending that McLellan relied on those since he outright admits he did not get through them and they omit information critical to a reliable analysis. *See* ECF #218-3, McLellan Depo., pp. 16-18, 113, 162, 195, 320.

C.   <u>**The Proffered Damage Opinions Are Not Helpful.**</u>

Plaintiff initially had no economist to apply Gaskin's marketing opinions in this case, but having realized his mistake he retained Pinsonneault for that role. Now, after FCA US has pointed out the many fatal disconnects between what his marketing expert (Gaskin) says and what his economist (Pinsonneault) says, disconnects that he does not earnestly dispute, Plaintiff argues that no economist is necessary for a class-wide damages model based on conjoint

analysis.[3] *See* Pl. Opp., p. 26. But, no law supports the notion that a marketing expert can opine on class-wide damages. Outside of cases where an expert has a demonstrable expertise in both economics ***and*** conjoint analysis, marketing experts, like Gaskin, are proffered in connection with an economist who is actually qualified to calculate damages, *e.g.*, deal with the economic issues of deriving the numbers to which the conjoint result will apply and applying the result. *See, e.g, Khoday v. Symantec Corp.*, 93 F.Supp.3d 1067, 1085 (D. Minn. 2015) ("Steven Herscovici, Ph.D., is a damages expert retained by the plaintiffs to apply Steven Gaskin's conjoint analysis"). If, as Plaintiff now claims, he is proffering Gaskin alone to calculate class-wide damages, then Gaskin is wholly unqualified, and his conjoint exercise is useless. Indeed, Gaskin himself unequivocally admits that he is not trying to be an economics expert, and that the result of his analysis "can't actually produce damages for class members." *See* ECF #218-4, Gaskin Depo., pp. 13, 139; *see also id.* at pp. 210-11 (Gaskin: "So essentially you were saying: Do [I] provide that one little number and that's it? Sadly, I think the answer is yes. I provide that number. The economist says that's sufficient, and then deals with those things.").

D.   **The Proffered Damage Opinions Are Not Reliable.**

***Gaskin's Opinions:*** Plaintiff dismisses Gaskin's lack of any meaningful work in this case (8 hours) as "minutiae." Pl. Opp., pp. 28-29. But, without actually designing the proposed

---

[3] Plaintiff attempts to dismiss Gaskin's and Pinsonneault's "conflicting views" as being matters of "weight" rather than admissibility. *See* Pl. Opp., 26. This is a bizarre position since Plaintiff is essentially saying it is for the finder of fact to decide which of his experts is more believable when they are pointing the finger at each other. This cannot be a problem of "weight" when one of the experts has to be believed, in which case the other expert is left as the one who, in the opinion of the other, failed to provide the missing pieces for the supposed damages model.

survey, or performing even the most preliminary research necessary to begin that process, Gaskin clearly cannot answer threshold questions about how his methodology will work here.

Furthermore, Plaintiff's contention that Gaskin's survey will account for supply-side factors and real world data, is misleading at best, since he points only to historical vehicle price information as the data being considered. *See* Pl. Opp., p. 30. This misses the point entirely since Gaskin does not consider market supply in the context of the price reductions he proposes to create, and his consideration of real world data does not include the fact that replacement valve stems can be purchased for as little as $7. He proposes to design a survey that might show a 47% reduction in willingness to pay (*see* Pl. Opp., p. 25), which would amount to tens of thousands of dollars in purchase price damages for some purchases, while ignoring that the vehicles can be "fixed" for $28 plus some labor. No rational automotive market would support such price reductions when the vehicles can be repaired for a tiny fraction of that amount, making clear Gaskin's proposed methodology is unhinged from real economic forces. It is also noteworthy that Plaintiff simply ignores the fact that Gaskin is wholly unable to assign any statistical significance to his results, which is yet another instance where, contrary to *Daubert* standards, everyone is just going to have to accept Gaskin's assurances of reliability.

**Pinsonneault's Opinions:** Plaintiff does not dispute the unreliability of Pinsonneault's opinions on the proffered class-wide conjoint damages model. Thus, Pinsonneault's opinions on conjoint analysis should be excluded.

### III. CONCLUSION

For the reasons set forth herein, and in its opening brief, Defendant FCA US LLC respectfully requests that this Court grant its motion to exclude the reports and testimony of Plaintiff's proffered experts.

Dated: May 4, 2018

         Respectfully Submitted,

         **POPE, SCHRADER & POPE, LLP**

By:  /s/ Alan J. Pope
      Alan J. Pope
      Bar Enroll No. 301508
      apope@psplawfirm.com
      2 Court Street, 4th Floor
      P.O. Box 510
      Binghamton, New York 13902
      Phone: (607) 584-4900

**THOMPSON COBURN LLP**
Kathy A. Wisniewski
kwisniewski@thompsoncoburn.com
Sharon B. Rosenberg
srosenberg@thompsoncoburn.com
Stephen D'Aunoy
sdaunoy@thompsoncoburn.com
One US Bank Plaza
St. Louis, Missouri 63101
(314) 552-6000
(314) 552-7000 (fax)

*Attorneys for FCA US LLC*

## CERTIFICATE OF SERVICE

    The undersigned certifies that on this 4th day of May, 2018, a copy of FCA US LLC's Reply in Support of Its Motion to Exclude the Reports and Testimony of Plaintiff's Experts was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.

         By:  /s/ Alan J. Pope