# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT TOMASSINI, *et al.*, | Case No. 3:14-cv-01226-MAD-ML |
| Plaintiff, | |
| | Hon. Mae A. D'Agostino |
| | United States District Judge |
| vs. | |
| FCA US LLC, | |
| Defendant. | |

## FCA US LLC'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

**COUGHLIN & GERHART, LLP**
Alan J. Pope, Esq.
apope@cglawoffices.com
Bar Roll No. 301508
99 Corporate Drive
Binghamton, New York 13904
(607) 723-9511
(607) 723-1530 (fax)

**THOMPSON COBURN LLP**
Kathy A. Wisniewski
kwisniewski@thompsoncoburn.com
Stephen D'Aunoy
sdaunoy@thompsoncoburn.com
Thomas L. Azar, Jr.
tazar@thompsoncoburn.com
Sharon B. Rosenberg
srosenberg@thompsoncoburn.com
One US Bank Plaza
St. Louis, Missouri 63101
(314) 552-6000
(314) 552-7000 (fax)

*Attorneys for FCA US LLC*

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ........................................................................................................... 1

II.  RELEVANT FACTS ...................................................................................................... 2

      A.     Hromowyk's Lawsuit And The Defect/Claims Underlying It ............................... 2

      B.     Hromowyk's Admitted Destruction Of Evidence ................................................... 3

            1.     The First Spoliation in February 2017 ........................................................ 3

            2.     The Second Spoliation in May 2018 ........................................................... 4

            3.     The Third Spoliation in April 2019 ............................................................. 5

III. ARGUMENT .................................................................................................................. 6

      A.     The Law Governing Spoliation Of Evidence .......................................................... 6

      B.     Hromowyk's Conduct Constitutes Spoliation Of Evidence .................................... 8

      C.     The Severe Sanctions Warranted Here .................................................................. 10

      D.     Hromowyk's Counsel Bears Responsibility For The Spoliation .......................... 14

IV. CONCLUSION ............................................................................................................. 15

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Akaosugi v. Benihana Nat'l Corp.*, 282 F.R.D. 241 (N.D.Cal. 2012) ............................................14

*Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450 (2d Cir. 2007) ..............................................................................................................................................6

*Brancaccio v. Mitsubishi Motors Co.*, 1992 WL 189937 (S.D.N.Y. 1992) .................................13

*Casale v. Kelly*, 710 F.Supp.2d 347 (S.D.N.Y. 2010) ..................................................................14

*Chrysler Realty Co., LLC v. Design Forum Architects, Inc.*, 2009 WL 5217992 (E.D.Mich. 2009) ...................................................................................................................13

*Dillon v. Nissan Motor Co.*, 986 F.2d 263 (8th Cir. 1993)..............................................................8

*Donato v. Fitzgibbons*, 172 F.R.D. 75 (S.D.N.Y. 1997)..................................................................7

*Dorchester Fin. Holdings Corp. v. Banco BRJ S.A.*, 304 F.R.D. 178 (S.D.N.Y. 2014) ............................................................................................................................................13

*Doyle v. Chrysler Group, LLC*, 2014 WL 7690155 (C.D.Cal. 2014), *grant of class cert. rev'd*, 663 Fed.Appx. 576 (9th Cir. 2016) ....................................................................8

*Erlandson v. Ford Motor Co.*, 2009 WL 3672898 (D.Or. 2009) .............................................8, 13

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014)....................................................................15

*Falcon v. Philips Elec. N.Am. Corp.*, 304 Fed.Appx. 896 (2d Cir. 2008) ....................................14

*Flury v. DaimlerChrysler Corp.*, 427 F.3d 939 (11th Cir. 2005) ..............................................8, 12

*Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423 (2d Cir. 2001) ........................................................7

*Graff v. Baja Marine Corp.*, 2007 WL 6900792 (N.D.Ga. 2007) ..................................................8

*In re Am. Exp. Anti-Steering Rules Antitrust Litig.*, 2015 WL 4645240 (E.D.N.Y. 2015) ..................................................................................................................................15

*Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620 (2d Cir. 2018) .................................7

*M & T Mortg. Corp. v. Miller*, 2007 WL 2403565 (E.D.N.Y. 2007)..............................................7

*Marcus v. BMW of N.Am., LLC*, 687 F.3d 583 (3d Cir. 2012) .....................................................12

*Metro Foundation Contractors, Inc. v. Arch Ins. Co.*, 551 Fed.Appx. 607 (2d Cir. 2014) ........................................................................................................................11

*Moody v. CSX Transp., Inc.*, 271 F.Supp.3d 410 (W.D.N.Y. 2017).................................................6

*Mooradian v. FCA US LLC*, 286 F.Supp.3d 865 (N.D.Ohio 2017) .........................................13, 14

*Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99 (2d Cir. 2002).........................7

*Silvestri v. Gen. Motors Corp.*, 271 F.3d 583 (4th Cir. 2001) ....................................................8, 12

*Spratley v. FCA US LLC*, Case No. 3:17-cv-00062 (N.D.N.Y.) ......................................................2

*Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68 (S.D.N.Y. 1991).....................................7, 14

*Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, 2012 WL 4127824 (W.D.Mich. 2012) .....................15

*West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776 (2d Cir. 1999).......................................10, 11

*Woodard v. Ford Motor Co.*, 2013 WL 3024828 (D.Or. 2013) .....................................................12

*Zubulake v. UBS Warburg*, LLC, 220 F.R.D. 212 (S.D.N.Y. 2003) ..........................................7, 14

**Statutes and Constitutional Provisions**

New York's Unlawful and Deceptive Practices Act, N.Y. Gen. Bus. Law § 349............................2

## I. INTRODUCTION

This case involves multiple, intentional, and egregious acts of spoliation of highly relevant evidence. Plaintiff Thomas Hromowyk's claims against Defendant FCA US LLC are centered on allegations that the original tire valve stems incorporated in his vehicle's tire pressure monitoring systems (TPMS) "broke or cracked" due to a metal composition defect that caused them to corrode "prematurely."[1] Thus, there can be no dispute that the valve stems and TPMS units on Hromowyk's own vehicle are vital, and perhaps the most important, evidence in this case. Yet, on *three* separate occasions – once shortly before he filed suit at a time when he had retained counsel, and *twice **after filing his lawsuit*** – Hromowyk took his vehicle to a third-party repair shop and directed the people there to remove and replace its valve stems and TPMS components. During each of these separate acts of spoliation, Hromowyk admits that he made no effort, whatsoever, to prevent the components from being altered or damaged during their removal. And, astoundingly, on every one of these three occasions Hromowyk's counsel *knew in advance* that he intended to alter this critical evidence but failed to stop him or to notify FCA US of his plan to do so.

The events which transpired here cannot be interpreted as anything other than Hromowyk and his counsel engaging in an intentional and egregious spoliation of evidence. Thus, sanctions are clearly warranted. FCA US asks that the sanction be in the form of dismissal of Hromowyk's claim and that some type of sanctions issue against his counsel who acquiesced in the spoliation.

---

[1] *See, e.g.*, Amended Class Action Complaint, ECF #243 ("Am. Comp."), ¶¶ 25-26, 99.

## II. RELEVANT FACTS

A. <u>Hromowyk's Lawsuit And The Defect/Claims Underlying It.</u>

Hromowyk filed his lawsuit against FCA US on March 10, 2017.[2] He brings a single claim under New York's Unlawful and Deceptive Practices Act, N.Y. Gen. Bus. Law § 349, based on a purported "defect" in the model-year 2010 Dodge Grand Caravan vehicle he purchased in October 2009. Am. Comp., ¶¶ 96, 126-29. His allegation is that the valve stems and nuts used in his vehicle's "tire pressure monitoring system (TPMS)" are defective because they can break or "crack" due to "premature corrosion." *Id.* at ¶¶ 1-2, 5, 12, 25, 99.

In the Amended Complaint, Hromowyk alleges only that he paid for "two TPMS valve stems" that were replaced before he filed suit, one in "August 2015" and the other in "February 2017." *Id.* at ¶¶ 99-100. Subsequently, in his discovery responses served on April 8, 2019, Hromowyk revealed for the first time that his vehicle had received a third TPMS valve stem replacement on May 24, 2018. *See* Plaintiff Thomas Hromowyk's Responses to Defendant's First Set of Interrogatories, Nos. 6-7, attached hereto as Exhibit A. Later, during his July 29, 2019 deposition, Hromowyk disclosed for the first time that his vehicle had received a fourth TPMS valve stem replacement on April 11, 2019. *See* Transcript of Deposition of Thomas Hromowyk, taken July 29, 2019, attached hereto as Exhibit B ("Pl. Depo."), pp. 39-41, 189.

---

[2] Hromowyk first asserted his claim in *Spratley v. FCA US LLC*, Case No. 3:17-cv-00062 (N.D.N.Y.) ("*Spratley*"). *See Spratley* Docket at ECF #51. He subsequently joined this case as a plaintiff (bringing the same claim that he did in *Spratley*) when he was added in Amended Complaint filed on January 1, 2019. *See*, *generally*, Am. Comp.

B.  **Hromowyk's Admitted Destruction Of Evidence.**

1.  *The First Spoliation in February 2017.*

Three weeks before he filed his lawsuit, on February 17, 2017, Hromowyk took his Grand Caravan to a third-party repair shop, Brownie's Auto Care, and told them to replace his vehicle's right-front TPMS unit because he had noticed its valve stem nut was "cracked." *See* Pl. Depo., pp. 114, 167, 172-73. At the time he did this Hromowyk was *already* working with his attorneys of record on filing a lawsuit, and he claims that, per what his counsel directed him to do, he asked Brownie's to "save the parts" that were removed from his vehicle. Pl. Depo., pp. 175-76. Whether any parts were actually saved and given to Hromowyk, however, is an open question. Although Hromowyk claims that a TPMS component was returned to him by Brownie's, the owner of that entity attested that if a request to save a removed component had actually been made it would have been "specifically noted" on the invoice, and, because it was not, he believes the removed TPMS was "discarded (into the trash) at the time that the vehicle was serviced." *See* Declaration of Jarrod Brown, attached hereto as Exhibit C ("Brown Decl."), ¶¶ 3, 5.

Hromowyk admits that he did nothing to document the condition of the TPMS, the valve stem, or nut at the time it was removed from his vehicle, or to properly preserve this evidence. Pl. Depo., p. 177. He took no pictures or videos of these components before or after Brownie's removed them. *Id.* at pp. 174, 177. He did not watch or videotape any part of the repair. *Id.* at p. 121. He had no conversations with anyone at Brownie's about why the nut had cracked. *Id.* at p. 173. He never told anyone at Brownie's about his plan to file a lawsuit. *Id.* at p. 184. He does not recall any removed components being bagged or labeled in any way, but remembers that he left some component he "had never seen … before" sitting out in his garage, unsecured, during the

middle of winter until his counsel eventually sent him a shipping label to forward the parts to them. *Id.* at pp. 176-79.

At the time he tendered his vehicle for the repair, Hromowyk never told anyone at Brownie's that it and its TPMS components would be evidence in his planned lawsuit. *Id.* He never warned anyone at Brownie's about the need to preserve the parts without further damage or alteration. *Id.* at p. 176; *see also id.* at p. 184 ("Q: At any time where you've talked to Brownie's and had them remove a TPMS unit from your vehicle, have you told them … [d]on't grab it with some pliers and just wrench it out of there. It needs to be preserved. Have you ever had any conversation like that with anyone at Brownie's? A: I believe all I told them was I need the parts."); Brown Decl., ¶ 3 ("Brownie's was not asked to take any special precaution to avoid altering the component while removing or handling it").

Neither Hromowyk nor his counsel contacted FCA US about the plan to alter Hromowyk's vehicle before the February 2017 repair. *See* Declaration of Stephen A. D'Aunoy ("D'Aunoy Decl."), attached hereto as Exhibit D, ¶ 2.

2.     *The Second Spoliation in May 2018.*

On May 24, 2018, Hromowyk took his vehicle to Brownie's to have a different TPMS unit (the one on the left-rear tire) replaced because he allegedly noticed it had a crack. Pl. Depo., pp. 181-83. At that point, his vehicle had been driven almost 9 years and 96,556 miles. *Id.* at p. 183. This replacement occurred **14 months after** Hromowyk filed his claims against FCA US. Yet, Hromowyk and his counsel again provided no notice, whatsoever, to FCA US about any planned alteration of the Hromowyk vehicle or its components. *Id.* at p. 183; *see also* D'Aunoy Decl., ¶ 3. Furthermore, Hromowyk did ***not*** tell anyone at Brownie's about his already-pending lawsuit, he did ***not*** tell them that his vehicle and TPMS components were evidence relevant to the

lawsuit, and he did ***not*** tell them of the need to preserve any components of the TPMS unit and to ensure that they were not altered or damaged during the replacement process.  *See* Pl. Depo., pp. 183-84; *see also* Brown Decl., ¶ 4.  Hromowyk simply told Brownie's he "want[ed] the parts back.  That's all."  Pl. Depo., p. 184.  Brownie's records for this repair do not indicate that a request for return of any parts was made, and its owner believes that everything removed from Hromowyk's vehicle during the May 2018 repair was discarded.  Brown Decl., ¶ 4.

Hromowyk tried to take a picture with his cell phone of the TPMS valve stem before it was removed from his vehicle.  *Id.* at pp. 184-86.  But, he does not know which of the various photos he has produced actually depicts the TPMS that was removed in 2018, and he admits that the one photo he thinks might "possibly" be of that component "is not exactly a picture of clarity."  *Id.* at pp. 185-86.  Hromowyk does not remember how Brownie's returned any components to him other than it "[m]ight" have come in "a little box."  *Id.* at pp. 187-88.  Within "a week or two" of the May 2018 repair he sent whatever he received from Brownie's to his counsel, after they provided him a shipping label.  *Id.* at p. 188.

### 3.     *The Third Spoliation in April 2019.*

In December 12, 2018, the Court entered an Order that "further discovery" would be allowed regarding Hromowyk's claim and that this discovery would include an "inspection of [his] vehicle."  *See* Jan. 8, 2019 Minute Entry.  Then, on April 8, 2019, Hromowyk responded to FCA US's request for production demanding production of his vehicle for inspection indicating he was "willing to allow Defendant to inspect his vehicle at a time that is convenient to all parties." *See* Plaintiff Thomas Hromowyk's Response to Defendant's First Set of Requests for Production of Documents, attached hereto as Exhibit E, No. 56.  ***Just three days after stating this***, on April 11, 2019, Hromowyk again took his vehicle to Brownie's and instructed them to remove and replace

a TPMS unit from his vehicle (the right rear).  Pl. Depo., p. 189; *see also* Apr. 11, 2019 Brownie's Auto Care Invoice, attached hereto as Exhibit F.  Hromowyk and his counsel did ***not*** tell FCA US of the planned vehicle alteration or provide it an opportunity to inspect the vehicle before it was altered.  D'Aunoy Decl., ¶ 4.  In fact, they never disclosed that the repair had occurred and did not produce any record of it until several months later, during Hromowyk's July 29, 2019 deposition.  Pl. Depo., pp. 39-41, 189.  When he delivered his vehicle to Brownie's, Hromowyk did ***not*** tell them that he had a pending lawsuit, and he did ***not*** instruct them to take precautions to ensure that any removed components were not altered or damaged during the repair process.  *Id.* at pp. 184, 191; *see also* Brown Decl., ¶ 5.  Hromowyk tried to take some photos of the components before Brownie's removed them.  Pl. Depo., pp. 191-92.  And, this time, Hromowyk asked that the removed parts be returned to him, a request that was memorialized in the invoice.  *See* Brown Decl., ¶ 5; Exhibit F.

## III.  ARGUMENT

### A.  The Law Governing Spoliation Of Evidence.

"Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 457 (2d Cir. 2007) (quotation omitted).  This Court's authority to impose sanctions for spoliation of evidence "arises from [its] inherent power to control the judicial process and litigation," and to address conduct "which abuses the judicial process." *Moody v. CSX Transp., Inc.*, 271 F.Supp.3d 410, 424 (W.D.N.Y. 2017) (quotation omitted).  Sanctions for spoliation are warranted where:  (1) "the party having control over the evidence had an obligation to preserve it at the time it was destroyed"; (2) the spoliator acted "with a culpable state of mind"; and (3) the evidence "was relevant to the party's claim or

defense." *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd*., 880 F.3d 620, 628 (2d Cir. 2018); *see also Zubulake v. UBS Warburg*, LLC, 220 F.R.D. 212, 220 (S.D.N.Y. 2003). Each of these three elements carries its own standard.

*First,* every party has "a duty to preserve what it knows, or reasonably should know, is relevant in the action … is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72 (S.D.N.Y. 1991) (quotation omitted). "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Exp. Corp*., 247 F.3d 423, 436 (2d Cir. 2001). And, once the duty to preserve evidence in a pending or anticipated lawsuit is triggered, it continues throughout the litigation. *See M & T Mortg. Corp. v. Miller*, 2007 WL 2403565, **5-6 (E.D.N.Y. 2007).

*Second*, a "culpable state of mind" includes negligence. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002) ("the 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed knowingly, even if without the intent to [breach a duty to preserve it], or **negligently**" (emphasis and alteration in original, quotation omitted)). Once the duty to preserve attaches, any destruction of evidence "is, at a minimum, negligent." *Zubulake*, 220 F.R.D. at 220. Thus, where a party destroys evidence known to have some importance in deciding the issues in a case, the "culpable state of mind" element is satisfied. *See. e.g.*, *Donato v. Fitzgibbons*, 172 F.R.D. 75, 81 (S.D.N.Y. 1997).

*Third*, evidence is "relevant" if "a reasonable trier of fact could find that it would support [a party's] claim or defense." *Residential Funding*, 306 F.3d at 107. Notably, in a vehicle-defect case, courts agree that the plaintiff's own vehicle, and any allegedly defective components, are

***"central to his case," "critically important,"*** and ***"the most crucial and reliable evidence available to the parties."*** *Flury v. DaimlerChrysler Corp.*, 427 F.3d 939, 945-47 (11th Cir. 2005) (emphasis added); *see also Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 593-94 (4th Cir. 2001) (vehicle itself was not only "the central piece of evidence in [the] case," but "the only evidence from which [defendant] could develop its defenses adequately"); *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 267 (8th Cir. 1993) ("plaintiffs' expert and plaintiffs' attorney knew or should have known that the car was an important piece of evidence and should have been preserved in its entirety"); *Doyle v. Chrysler Group, LLC*, 2014 WL 7690155, **2-3 (C.D.Cal. 2014), *grant of class cert. rev'd*, 663 Fed.Appx. 576 (9th Cir. 2016) ("When one is … making a claim that a vehicle is defective, it takes no special training or particular sophistication to recognize the potential relevance of that vehicle as evidence"); *Erlandson v. Ford Motor Co.*, 2009 WL 3672898, *4 (D.Or. 2009) (rejecting argument that allegedly defective vehicle disposed of by plaintiff was "not relevant"); *Graff v. Baja Marine Corp.*, 2007 WL 6900792, *4 (N.D.Ga. 2007) ("The court will not tolerate litigants tampering with the very component they contend is defective").

### B. Hromowyk's Conduct Constitutes Spoliation Of Evidence.

It is difficult to imagine a clearer case of spoliation of evidence than that presented by the facts here. *First,* Hromowyk was the (only) one with control over the evidence at issue since that evidence was the Grand Caravan vehicle he owns and its allegedly defective TPMS components. Thus, he had a clear and unequivocal duty to preserve that evidence and not alter it. And, that duty arose ***before*** the first act of spoliation in February 2017, since he was already working with the attorneys in preparing his lawsuit against FCA US.

*Second*, Hromowyk's actions make it abundantly clear that he had the requisite "culpable state of mind" when he destroyed evidence. Hromowyk knew he was planning a lawsuit centered

on his vehicle's TPMS valve stems before his spoliation in 2017; he knew he had filed his lawsuit before his spoliation in 2018; and, before his spoliation in 2019, he not only knew he had a pending lawsuit, but also that he had just answered discovery and agreed to produce his vehicle for an inspection. That Hromowyk knew his actions would affect his claims cannot seriously be disputed when he felt compelled to consult with his attorneys beforehand, and, before the 2018 and 2019 repairs, to try to photograph the condition of the TPMS components. In other words, Hromowyk acted "knowingly" because he was fully aware that what he was about to do could affect evidence relevant to his legal claim. Yet, inexplicably, he did it anyway. And, to make matters even more egregious, he kept right on altering his vehicle and destroying evidence even **after** FCA US specifically requested the production of his vehicle for inspection and he agreed to produce it.

*Third*, there can be no legitimate dispute about the relevance of the destroyed evidence. Hromowyk's claim is expressly based on allegations that the "TPMS valve stems and nuts" in his vehicle were damaged due to an alleged defect involving "premature corrosion," and not for any other reason. Am. Comp., ¶¶ 5, 12, 25, 99. Having made this allegation, Hromowyk proceeded to permanently alter, indeed destroy beyond any usefulness, these very components.

That Hromowyk now claims he asked for removed components to be returned after each repair does not change the fact that spoliation has occurred. As an initial matter, he had a duty to preserve that evidence in its **unaltered** state at least until FCA US was given an opportunity to inspect it. Furthermore, Hromowyk admits he gave Brownie's absolutely no information about the vital importance of the TPMS components and the need to ensure they remained unaltered and they were not damaged while they were being removed/replaced. *See, e.g.*, Pl. Depo., p. 184. The fact that no such instruction was given, combined with the fact that there were no real efforts to ensure they were preserved thereafter in their pre-removal state, makes any components which

may have been saved virtually useless since it is now impossible to determine what conditions existed pre-removal versus those that resulted from the removal when pliers and wrenches were used by a mechanic to remove them without regard for whether they were being damaged in the process or not.  *See* Brown Decl., ¶¶ 3-5 (Brownie's was not asked to take, and thus did not take, "any special precaution to avoid altering the component[s] while removing or handling" them).

Adding to the clear prejudice which was caused by these actions is the uncertainty about what was "saved" and how it was saved after each repair.  Hromowyk now claims that ***three*** TPMS components were returned to him, one from each of the 2017, 2018, and 2019 repair visits.  But, Brownie's records indicate that ***only*** the parts removed from Hromowyk's vehicle in 2019 were returned to him.  And, Hromowyk did nothing to actually "preserve" what was returned to him by properly bagging and labeling components, choosing instead to toss them into a garage until some uncertain time when his counsel sent him the means to forward the parts to them and he got around to doing so.  Nothing remotely resembling an actual preservation or reliable chain-of-custody happened.  The lack of such precautions, combined with Hromowyk's and Brownie's disagreement on what was actually saved from the garbage, makes the spoliation all that more egregious.  In other words, Hromowyk's spoliation did not just materially alter the condition of key evidence – it made it impossible to tell whether what Hromowyk now declares to be "saved" evidence is really that at all.

C.     **The Severe Sanctions Warranted Here.**

This Court has broad discretion in determining an appropriate sanction for spoliation.  *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).  Such sanctions include outright dismissal, an adverse jury instruction, or barring the offending party from offering any evidence on the topics or issues that the spoliated evidence relates to.  *Id.*  The Court's sanction, however,

"should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *Id.*; *see also Metro Foundation Contractors, Inc. v. Arch Ins. Co.*, 551 Fed.Appx. 607, 609-10 (2d Cir. 2014) ("proper sanction[s] for spoliation … should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine," and address any prejudice to the opposing party). "Dismissal is appropriate if there is a showing of willfulness, bad faith, or fault on the part of the sanctioned party." *West*, 167 F.3d at 779.

The spoliation here is egregious and warrants the most severe sanction of dismissal of Hromowyk's claim. Alternatively, and at a minimum, a sanction should be levied either in the form of an order that a non-rebuttable adverse inference instruction be given at trial regarding Hromowyk's destruction of evidence, or a complete bar to Hromowyk using anything removed from his vehicle as evidence at class certification, summary judgment, and trial.

Severe sanctions are warranted because Hromowyk's fault could not be any clearer. This case does not involve one isolated "mistake," or one instance of spoliation. Hromowyk destroyed evidence before he filed suit and after retaining counsel. He then did it again, ***twice***, during litigation. And, the fact that he destroyed evidence just three days ***after*** agreeing to produce, but before actually producing, his vehicle for inspection per the request of FCA US suggests that Hromowyk was intentionally trying to hide relevant evidence from FCA US. When one considers that each of the three times Hromowyk destroyed evidence he had the benefit of counsel, it is hard to conclude anything other than that all of the spoliation which occurred was intentional and done with the intent to hide evidence.

The prejudice from Hromowyk's evidence destruction is profound.  FCA US has been deprived of any opportunity to inspect or test critical evidence in an untampered state.  And, the evidence that remains is completely unreliable and useless.  Because of the spoliation, FCA US is left unable prove with the most direct evidence the actual condition of any of the components at issue, or to show that any damage is attributable to causes other than the purported defect.  *See* ECF #228, p. 15 (this Court noting that there are "a variety of reasons why a vehicle's valve stems might need to be replaced" which have nothing to do with the alleged defect, and that "TPMS components can also fail for a variety of reasons").  And, Hromowyk's misconduct not only impacts FCA US's ability to defend against the ultimate liability question in this case, but its ability to oppose class certification as well.  Examining the TPMS components before they were altered is a fundamental and critical step in showing that the typicality and predominance requisites of class certification are not met.  *See, e.g.*, *Marcus v. BMW of N.Am., LLC*, 687 F.3d 583, 603-04 (3d Cir. 2012) (in case alleging defect in tires resulting in flats, district court erred with respect to predominance because plaintiffs' argument that damages could be measured by the cost of replacement tires ignored the fact that tires can "go flat" for reasons completely unrelated to a defect, and thus factual causation issues were "pivotal").

Granting a sanction of dismissal here would be in accord with the sanctions imposed by a host of other courts in similar circumstances.  *See, e.g.*, *Flury*, 427 F.3d at 945-47 (plaintiff's spoliation of allegedly defective vehicle resulted in "extreme prejudice" that was "incurable by any sanction other than dismissal"); *Silvestri*, 271 F.3d at 594 (failure to preserve allegedly defective vehicle was a "highly prejudicial act warranting dismissal"); *Woodard v. Ford Motor Co.*, 2013 WL 3024828, **4-5 (D.Or. 2013) (because plaintiff spoliated allegedly defective seatbelt "dismissal is the only appropriate sanction given the irreparable prejudice to Ford");

*Chrysler Realty Co., LLC v. Design Forum Architects, Inc.*, 2009 WL 5217992, *6 (E.D.Mich. 2009) (dismissing claim as spoliation sanction where the "Plaintiff neither permitted Defendant to inspect the original HVAC system, nor preserved this crucial evidence that it exclusively controlled" because it was "impossible to gauge to what extent, if any, other factors – manufacturing defects, incorrect installation, or improper maintenance – were potential causes of the system's alleged failure"); *Erlandson*, 2009 WL 3672898, at *4 (in vehicle defect case, "there is not any adequate substitute for the vehicle itself," and therefore "a lesser sanction than dismissal will not cure the prejudice to Defendant"); *Brancaccio v. Mitsubishi Motors Co.*, 1992 WL 189937, *2 (S.D.N.Y. 1992) (dismissing case based on plaintiff's spoliation of allegedly defective seatbelt because defendant manufacturers would clearly be "greatly frustrated in their ability to defend their case" without it).

In the event that this Court finds that dismissal is too harsh a sanction (which it is not), it should either award a mandatory adverse inference instruction or, alternatively, bar Hromowyk from relying on any evidence related to the spoliated components in supporting or opposing any motion, or at trial. A mandatory adverse inference instruction *requires* that the jury infer a given fact, and it is warranted where, as here, a party spoliates evidence after knowing of its relevance, even if there was never any intent to deny access to that evidence. *See, e.g., Dorchester Fin. Holdings Corp. v. Banco BRJ S.A.*, 304 F.R.D. 178, 183-85 (S.D.N.Y. 2014) (imposing mandatory adverse inference instruction based on evidence lost when plaintiff's computer "malfunctioned" and "crashed"). This, obviously, is the absolute bare minimum remedy for the misconduct that has taken place here. Notably, preclusion of all derived evidence as an alternative sanction was recently imposed in another case brought by one of the law firms representing Hromowyk (Whitfield Bryson Mason). *See Mooradian v. FCA US LLC*, 286 F.Supp.3d 865, 867-70

(N.D.Ohio 2017) (spoliation sanction barring plaintiff's use of evidence derived from component that was removed from his vehicle "after Defendant … said it wanted to inspect the evidence").

Under any outcome, the inevitable conclusion is that Hromowyk cannot represent any class due to a lack of adequacy and typicality. *See, e.g.*, *Falcon v. Philips Elec. N.Am. Corp.*, 304 Fed.Appx. 896, 897 (2d Cir. 2008) (plaintiff was not adequate representative because disposal of his allegedly defective television put plaintiff in the position of, among other things, having to "defend[] against a charge of spoliation of evidence"); *Mooradian*, 286 F.Supp.3d at 870 (disqualifying plaintiff from serving as a class representative because "[h]is actions have made him an atypical member of the class by giving [defendant] numerous possible defenses against him that would not apply to the class as a whole"); *Akaosugi v. Benihana Nat'l Corp.*, 282 F.R.D. 241, 257 (N.D.Cal. 2012) (finding plaintiff to be an inadequate representative, despite having staved off sanctions for spoliation, because acts giving rise to spoliation motion were "unique" to plaintiff and could affect his ability to protect the class).

**D.** **Hromowyk's Counsel Bears Responsibility For The Spoliation.**

The responsibility for ensuring that evidence is preserved runs "first to counsel, who [has] a duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction." *Turner*, 142 F.R.D. at 73; *see also Casale v. Kelly*, 710 F.Supp.2d 347, 365 (S.D.N.Y. 2010) (the "[r]esponsibility for adherence to the duty to preserve evidence lies not only with the parties but also, to a significant extent, with their counsel"); *Zubulake*, 229 F.R.D. at 432 (counsel "must take affirmative steps to monitor compliance" so evidence is preserved). Thus, where a party's counsel fails to ensure that evidence is preserved, the "appropriate relief" may include sanctions on both the party ***"and their attorney."*** *Turner*, 142 F.R.D. at 80 (emphasis added).

According to Hromowyk, his counsel were directing his actions even during the time period that the first spoliation occurred (in 2017). *See* Pl. Depo., p. 175 (Hromowyk testifying that with respect to repair he was doing what he "was told to" by his counsel). And, by the time Hromowyk subsequently destroyed evidence again in 2018 and 2019, his counsel could not possibly have been ignorant of the need to intervene in order to prevent repeated acts of spoliation. At best, Hromowyk's counsel condoned the destruction of evidence on multiple, separate occasions. At worst, they encouraged or even directed it. This raises an issue as to their integrity, and, consequently, they should be disqualified as class counsel. *See, e.g.*, *Eubank v. Pella Corp.*, 753 F.3d 718, 724 (7th Cir. 2014) ("When class counsel have demonstrated a lack of integrity, a court can have no confidence that they will act as conscientious fiduciaries of the class"); *In re Am. Exp. Anti-Steering Rules Antitrust Litig.*, 2015 WL 4645240, *12 (E.D.N.Y. 2015) ("class counsel's integrity, loyalty, and adequacy generally are perhaps even more important than the adequacy of class plaintiffs"); *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, 2012 WL 4127824, *7 (W.D.Mich. 2012) (evaluating proposed class counsel's integrity in determining adequacy requisite).

## IV. CONCLUSION

For the reasons set forth herein, Defendant FCA US LLC respectfully requests that this Court grant its motion and impose sanctions for spoliation of evidence in the form of dismissal of Plaintiff Thomas Hromowyk's claim. Alternatively, FCA US request that the Court impose sanctions in the form of an order (1) that a mandatory adverse evidence instruction be given at trial, and (2) barring Hromowyk from relying on the spoliated components or anything derived from them in supporting or opposing any motion, and at trial. FCA US additionally requests that

this Court find Hromowyk to be an atypical and inadequate representative of the putative class, and, further, that it disqualify Hromowyk's counsel of record as class counsel.

Dated: September 27, 2019

Respectfully Submitted,

**COUGHLIN & GERHART, LLP**

By: */s/ Alan J. Pope*
Alan J. Pope
Bar Enroll No. 301508
apope@cglawoffices.com
99 Corporate Drive
Binghamton, New York 13904
(607) 723-9511
(607) 723-1530 (fax)

**THOMPSON COBURN LLP**
Kathy A. Wisniewski
kwisniewski@thompsoncoburn.com
Stephen D'Aunoy
sdaunoy@thompsoncoburn.com
Thomas L. Azar, Jr.
tazar@thompsoncoburn.com
Sharon B. Rosenberg
srosenberg@thompsoncoburn.com
One US Bank Plaza
St. Louis, Missouri 63101
(314) 552-6000
(314) 552-7000 (fax)

*Attorneys for FCA US LLC*

# CERTIFICATE OF SERVICE

The undersigned certifies that on this 27th day of September, 2019, a copy of FCA US LLC's Memorandum of Law in Support of its Motion for Sanctions for Spoliation of Evidence was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.

By: */s/ Alan J. Pope*