**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | : | |
| ROBERT TOMASSINI, *et al.*, | : | Case No. 3:14-cv-01226-MAD-ML |
| | : | |
| Plaintiff, | : | |
| | : | Hon. Mae A. D'Agostino |
| | : | United States District Judge |
| vs. | : | |
| | : | |
| FCA US LLC, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |
| | : | |

**FCA US LLC'S RESPONSE TO PLAINTIFF'S**
**<u>COUNTER-STATEMENT OF MATERIAL FACTS</u>**

In opposing FCA US LLC's Motion for Summary Judgment on Plaintiff Thomas Hromowyk's Individual Claim (ECF #280), Plaintiff Thomas Hromowyk lodges a hodgepodge of completely irrelevant "additional facts." *See* Pl. Thomas Hromowyk's Opp. to Def.'s Statement of Material Facts and Pl.'s Counter-Statement of Material Facts, ECF #293-1. FCA US provides this response for purposes of its summary judgment motion, but reserves its right to further contest and respond to the purported "facts" in all other proceedings in this case.

**<u>GENERAL OBJECTIONS</u>**

Except as otherwise noted, FCA US objects to each and every fact set forth by Plaintiff Thomas Hromowyk in his Counter-Statement of Material Facts on the following two bases:

**A.    Plaintiff's Counter-Statement of Facts Is Not Relevant to the Issues in FCA US's Motion and Should Thus Be Disregarded.**

This District's rules permit "the non-movant [to include in his response] . . . a short and concise statement of any additional material facts that the non-movant contends are in dispute."

*See* L.R. 7.1(a)(3).  But, counter-statements of material facts are "deficient" where "they assert additional facts … that are immaterial to the issues [raised in the motion for summary judgment]."  *Cusamano v. Sobek*, 604 F.Supp.2d 416, 442, 495 (N.D.N.Y. 2009).  That is exactly the situation here.  All of Hromowyk's facts are wholly irrelevant to the narrow issues presented in, and underlying, FCA US's motion for summary judgment.  None are material to:  (1) whether Hromowyk's single claim under N.Y. Gen. Bus. Law § 349 is time-barred; (2) whether he has presented competent evidence to satisfy the causation and injury elements required for that claim; or (3) whether he has presented competent evidence showing that FCA US's conduct was "misleading in a material way," as is also necessary to prevail on that claim.  *See generally* ECF #280.  Thus, all of Hromowyk's "additional facts" are improper and should be disregarded.

### B.      Plaintiff's Counter-Statement of Facts Fails to Comply with L.R. 7.1(a)(3).

In paragraphs 2, 5, 17, 18, 19, 26, 28, 31, 33, 35, 38, and 39, Hromowyk **admits** FCA US's facts, but then attempts to qualify his admissions through discussion of immaterial facts or arguments.  This is improper.  Where a plaintiff admits a fact, and then "proceeds to introduce immaterial facts and/or legal argument in violation of Local Rule 7.1(a)(3), ... Defendants' properly supported facts to which Plaintiff responded [should be] deemed admitted ***and Plaintiff's additional assertions [should be] disregarded.***"  *Boger v. N.Y. State Office of Parks, Recreation & Historic Pres.*, 2019 WL 2766897, *2 (N.D.N.Y. 2019) (emphasis added); *see also Black v. Fischer*, 2010 WL 2985081, *5 (N.D.N.Y. 2010) (finding plaintiff's "Local Rule 7.1(a)(3) Statement improperly consist[ed] of argument, rather than statements of fact" and that "Plaintiff ha[d] failed to comply with the requirements of Local Rule 7.1(a)(3) and [failed to] submit a proper statement of material facts responding to that filed by defendants," and thus recommending to district court that it "deem those facts set forth in defendants' Local Rule

7.1(a) (3) Statement to have been admitted").  This Court should disregard the qualifications that Hromowyk seeks to add to his admissions.

Additionally, while FCA US concedes that Plaintiff may properly add counter-facts to paragraphs where he *denies* FCA US's allegations, he must do so in "separately numbered paragraphs," per L.R. 7.1(3)(a).  Yet, Hromowyk only complies with this rule sporadically, and continually repeats many facts, which makes the process of responding to his "facts" unnecessarily cumbersome and time consuming.  This provides yet another basis for this court to find Plaintiff's counter-statement deficient.

Despite these manifest deficiencies, Defendant provides the below responses and objections to Plaintiff's additional "facts."[1]

---

[1] FCA US's statement of material facts uses Arabic numbering, *i.e.* "1, 2, 3 …" Plaintiff's counter-statement of material facts tracks FCA US's arabic numbering, and, under each arabic number, periodically lists additional assertions.  Sometimes, Plaintiff uses Roman numerals, *i.e.* "i, ii, iii …"  Sometimes, he does not.  In an effort to assist the Court, FCA US has reproduced each of Plaintiff's counter-statements of material facts, and, below, added its responses and objections.  FCA US's numbering scheme uses the relevant number from its own statement of material facts, followed by the relevant Roman numeral from Plaintiff's counter-statement of material facts, *i.e.* "1(i), 1(ii), 2(i), (2)(ii)," where applicable.

## RESPONSES TO PLAINTIFF'S ADDITIONAL MATERIAL FACTS

**1(i).**      Mullane was an authorized Chrysler Dodge dealer (See Exh. 1).

**FCA US RESPONSE**:  FCA US denies the purported fact on the basis that the referenced document does not support it.  Nothing in Exhibit 1, a Mullane Motors, Inc. invoice, establishes that Mullane was an "authorized" Chrysler Dodge Dealer.  In any event, FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* FCA US LLC'S Reply in Support of Its Motion for Summary Judgment ("Reply Brief"), filed herewith; *see also Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 84 (2d Cir.), *opinion corrected*, 511 F.3d 238 (2d Cir. 2004).

**1(ii).**      The Vehicle came with a warranty for 36,000 miles or 36 months (See, Exh. 2 herewith Dep. of Thomas Hromowyk, conducted July 29, 2019) ("Hrom. Dep." hereinafter), pp. 115) and that Defendant (also referred to as "Chrysler" herein) was the warrantor (*See* Defendant's Answer to Hromowyk Complaint at ¶20 (Exh. 3 herewith; See Hrom. Dep., pp. 11-13, 165 (Exh. 2).

**FCA US RESPONSE**:  FCA US denies the purported fact on the basis that the referenced documents do not support it.  Nothing in the cited portions of Exhibits 2 or 3 contain any information that establishes the duration of the warranty or identity of the warrantor.  Regardless, FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

**2(i).**      As early as January 2009, Chrysler was aware that AL2000 valve stems and nuts were susceptible to Intergranular Corrosion and Stress Corrosion Cracking (also referred to as "SCC") in chloride environments such as roads in New York.  On January 27, 2009, Chrysler's third-party supplier, Continental Automotive Systems US, Inc. ("Continental"),

provided a presentation to Chrysler engineers due to reports of TPMS failures in the field and notified Chrysler of the differences between AL2000 and AL6000 valve stems and nuts and which stated: "The corrosion resistance of the 2000 series is inferior to the corrosion resistance of the 6000 series (6061). This resistance is mostly linked to the amount of copper found in the alloy")." Exh. 4 (CAS0001060); *See also*, Email from ██████████ to Chrysler personnel (CAS0001056) (Jan. 27, 2009), Exh. 5. The report noted that because of the failures due to corrosion, Continental planned to switch within one year to AL 6000 series but also noted "*this new alloy carries an additional cost.*" *Id.* at CAS0001062 (emphasis supplied).

  <u>**FCA US RESPONSE**</u>: FCA US denies this fact because it did not come into existence until April 28, 2009. *See* ECF #209-1, ¶ 6. On June 10, 2009, FCA US purchased certain assets of the entity formerly known as Chrysler LLC via a bankruptcy sale. *Id.* Prior to June 10, 2009, FCA US had no involvement in the design, manufacture or sale of any vehicle. *Id.* FCA US also denies that this purported fact is material to whether its summary judgment motion should be granted. *See* Reply Brief; *see also Powell*, 364 F.3d at 84.

  **2(ii).**  Chrysler also knew about the defect from the large number of back orders of replacement parts and the number of customers waiting for parts. *See* Deposition of ██████████ ("██████ Dep.")(May 10, 2017), 77:19-78:22, Exh. 6 ("what prompted the investigation [into using another supplier] was the high number of back orders. Just the high number of back orders and customers that we had waiting for parts").

  <u>**FCA US RESPONSE**</u>: FCA US denies this fact because it did not come into existence until April 28, 2009. *See* ECF #209-1, ¶ 6. On June 10, 2009, FCA US purchased certain assets of the entity formerly known as Chrysler LLC via a bankruptcy sale. *Id.* Prior to June 10, 2009, FCA US had no involvement in the design, manufacture or sale of any vehicle. *Id.* FCA US also

denies that this purported fact is material to whether its summary judgment motion should be granted. *See* Reply Brief; *see also Powell*, 364 F.3d at 84.

**2(iii).**   Chrysler's analysis of its warranty databases indicated that tens of thousands of TPMS units had been replaced in 2005-2010 Chrysler vehicles. *See* ███ Dep. at 62:14-66:6, 67:18-70:24, 71:14-72:19. The Warranty Claims database revealed at least 162 claims of "broken or cracked" valve stems or nuts and 352 claims for "leaks" during the proposed Class Period in New York State alone. *See* Warranty Claims, Exh. 7.

**FCA US RESPONSE**:   FCA US denies this fact because it did not come into existence until April 28, 2009. *See* ECF #209-1, ¶ 6.   On June 10, 2009, FCA US purchased certain assets of the entity formerly known as Chrysler LLC via a bankruptcy sale. *Id.*   Prior to June 10, 2009, FCA US had no involvement in the design, manufacture or sale of any vehicle. *Id.*

FCA US also denies the first purported fact—that FCA US's analysis of its warranty databases indicated that tens of thousands of TPMS units had been replaced in 2005-2010 Chrysler vehicles—on the basis that the referenced documents do not support it.   The deposition excerpts cited do not discuss the number of units replaced or the timeline of replacement.

FCA US further denies that any of the purported facts listed above are material to whether its summary judgment motion should be granted. *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

**2(iv).**   On April 6, 2009, the pervasive problem with broken and cracked valve stems led to Chrysler creating a "Black Belt" project to determine the cause of the broken and cracked stems. *See* Black Belt Project Update (MCPS038242-MCPS038243)(Aug. 14, 2009), Exh. 8. The Black Belt project continued through at least August 11, 2009 and entailed collecting data and testing failed parts. *Id.*

**FCA US RESPONSE**:  FCA US denies this fact because it did not come into existence until April 28, 2009.  *See* ECF #209-1, ¶ 6.  On June 10, 2009, FCA US purchased certain assets of the entity formerly known as Chrysler LLC via a bankruptcy sale.  *Id.*  Prior to June 10, 2009, FCA US had no involvement in the design, manufacture or sale of any vehicle.  *Id.*  FCA US also denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell*, 364 F.3d at 84.

**2(v).**      As of April 2010, Chrysler admitted that the "2011 alloy that [is] *being used now is definitely prone to stress corrosion cracking (SCC), while 6000 series is not susceptible to this type of corrosion*." Email from ███████ (CAS0000345)(Apr. 19, 2010), Exh. 9 (emphasis added); *see also* Forever Requirement Summary (MCPS034506)(May 26, 2010), Exh. 10 (affirming that "Al 6000 series components are less sensitive to corrosion compared to Al 2000 series.").

**FCA US RESPONSE**:  FCA US denies that it has admitted anything, and the cited documents do not prove that it has admitted anything.  FCA US also denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell*, 364 F.3d at 84.

**2(vi).**      In April 2010, an internal email from the lead Chrysler Product Investigator, ███████ (MCPS002394), dated Apr. 29, 2010 (Exh. 11) admitted "the material report is complete and attached. Stress Corrosion and Cracking is believed to have caused the failures" which can produce "catastrophic cracking, often leading to devastating and unexpected failure";

**FCA US RESPONSE**: FCA US denies that it has admitted anything, and the cited document does not prove that it has admitted anything.  FCA US also denies that this purported

fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell*, 364 F.3d at 84.

**2(vii).**    In May 2010, an internal email from ███████ (CAS0000097)(May 21, 2010), Exh. 12 referenced the "TPM breakage issue, and process changes made on the Schrader stem," and noted that he saw "next to no breakage on the competitors stems . . ."

**FCA US RESPONSE**:  FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell*, 364 F.3d at 84.

**2(viii).**    Faced with the high number of reported failures, Chrysler considered a field action or extended warranty for the AL2000 valve stems and nuts.  (Exh. 13, at MCPS037931).

**FCA US RESPONSE**:  FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

**2(ix).**    Using a "Weibull analysis," Chrysler found that the c/1000 rate (condition, or incidents, per thousand) at 36 months in service (MIS), would be 70/1000. *See* Email from ███████ (MCPS037916) (Sept. 9, 2010), Exh. 14. In other words, Defendant determined that there would be a 7% failure rate at three years. *Id.*; *see also* Calendar Appointment and Document from ███████ (MCPS037930)(Oct.18, 2010), Exh. 13.

**FCA US RESPONSE**:  FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

**2(x).**    Chrysler's Weibull analysis further determined that the failure rate would reach 180 – 250 c/1000 at 60 MIS, or 18% to 25% at five years under "normal use." Exh. 14, at MCPS037915.

**FCA US RESPONSE**:  FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

**2(xi).**      However, the failure rate was expected to "max out" when the tires were changed (as was expected in five years), and had the "potential to be 4x with all four sensors at once." *Id*.  In other words, Chrysler predicted a ***potential 100% failure rate within five years.***

**FCA US RESPONSE**: FCA US denies this statement because it is wholly unsupported by the cited document.  The statement is also inconsistent with other facts asserted by Plaintiff. Immediately above, in Plaintiff's statement 2(x), Plaintiff claims that a failure rate of "18% to 25% at five years under 'normal use'" was predicted, but he now asserts that there was a "potential 100% failure rate within five years."  This is logically impossible and results from Plaintiff's misinterpreting the documents he relies upon.  FCA US also denies that these purported facts are material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

**2(xii).**      In addition, Plaintiff has testified that if he had known the TPMS units would fail prematurely due to a materials issue, he would not have purchased the Grand Caravan vehicle (Hrom. Dep., p. 230-31, Exh. 2).

**FCA US RESPONSE**: FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

**2(xiii).**      Alternatively, he would have negotiated a lesser price as the vehicle was worth less (Hrom. Dep. 231) or he would have insisted they replace the defective units with nondefective units at their cost, not mine (See also, Exh. 16, Declaration of Thomas Hromowyk in Opposition to Motion for Summary Judgment ("Hrom. Decl."), at ¶ 16).

**FCA US RESPONSE**: FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

FCA US also objects to Plaintiff's assertion that Mr. Hromowyk would have been successful in negotiating a lesser price for his vehicle as lacking foundation and wholly speculative.

**3(i).**     Denies Defendant's statement and in particular use of the term "problem free" since, in fact, certain materials and manufacturing defects were covered under the three year 36,000 mile warranty by Defendant which Chrysler would be obligated to pay for and, further, while Plaintiff answered affirmatively to the question "Did anyone at Mullane Motors promise you that you would not have any problem with the Grand Caravan vehicle at all" (Hrom. Dep. p. 84, Exh. 2), this did not include a materials defect which was a safety issue known to Chrysler and withheld from Plaintiff and other owners which Chrysler would otherwise be obligated to pay for or cover under warranty of it had been revealed to Plaintiff and not concealed by Defendant (Hrom. Dep. 105-106; 230-231).

**FCA US RESPONSE**: FCA US denies the purported fact on the basis that the referenced documents do not support it.  Further, Mr. Hromowyk has no basis upon which he could testify to FCA US's apparent knowledge of any defect.  And, regardless, FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

**3(ii).**     As Mr. Hromowyk further stated, he would not expect this part to fail after only 3.5 years on a new Vehicle for which he paid $26,000 (Hrom. Dep. p. 121).

**FCA US RESPONSE**:  FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

**3(iii).**     Plaintiff also considered it a safety issue stating "My tire went flat doing 60 on a highway. Fortunately, nobody was on the side of me and I was able to get off the highway. I

didn't lose control. I could have lost control and not only injured myself and my wife but somebody else besides." (Hrom. Dep. p. 106).

**FCA US RESPONSE**:  FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84. FCA US is without knowledge as to Mr. Hromowyk's factual assertion.

4.      Plaintiff's additional facts under Statement 4 are identical to those under Statement 3(ii).  FCA US thus incorporates its response and objections to 3(ii).

5(i).      See Exh. 17, Intertek Report of ███████ finding that the TPMS units examined, including the three (3) from Plaintiff Hromowyk's vehicle, all used AL2000, an alloy known to corrode prematurely due to the presence of copper. Intertek Report, dated February 16, 2016 (Exh. 17 at pp. 8-11 and Appendix C ("Chrysler Materials Engineering Lab Report 135639," completed 4/21/2010) and Appendix D ("Chrysler Materials Engineering Lab Report 137860," completed 4/1/2011);

**FCA US RESPONSE**:  FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84. Furthermore, it is a disputed issue whether any of the TPMS units that ██████ claims to have examined are even from Hromowyk's own vehicle.  *See* FCA US LLC's Memorandum of Law in Support of Its Motion for Sanctions for Spoliation of Evidence, ECF #281-1, pp. 3-6 ("Sanctions Brief"); FCA US LLC's Reply in Support of Its Motion For Sanctions for Spoliation of Evidence, filed on this date, pp. 2-4 ("Sanctions Reply Brief").

5(ii).      *See also* Exh. 18, Supplemental Rule 26(a)(2)(C) Report and Declaration of ██████ dated August 2, 2019 ("██████ Decl."), finding Mr. Hromowyk's valve stems were composed of AL2000 and further stating that "[m]y examination of these valve stems and

nuts provides further support for the opinions that I have previously offered in this case. The failed valve stems and nuts from Mr. Hromowyk's Vehicle in my opinion exhibited stress corrosion cracking."

**FCA US RESPONSE**:  FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84. Furthermore, it is a disputed issue whether any of the TPMS units that ███ claims to have examined are even from Hromowyk's own vehicle.  *See* Sanctions Brief, ECF #281-1, pp. 3-6; Sanctions Reply Brief, filed on this date, pp. 2-4.

**5(iii).**     The fact that Defendant was aware that the defect would cause premature failure of the TPMS units and that this happened to Mr. Hromowyk while driving at a high speed on the highway are material facts (Hrom. Dep. 125-127; Hrom Decl., ¶10).

**FCA US RESPONSE**:  FCA US denies the unsupported assertion that an alleged defect caused the incident, and that FCA US was aware of as much, on the basis that the referenced documents do not support it.  The cited testimony only discusses the facts surrounding an alleged failure with his vehicle and says nothing about causation or FCA US's awareness of any defect. Furthermore, while the cited portion of Hromowyk's declaration describes the facts surrounding an alleged failure, his allegations regarding causation are conclusory:  "it was clear that the flat occurred because the valve stem and TPMS unit in general had failed."  Hrom Decl., ¶ 10, Exh. 16.  He provides no basis upon which he could have drawn this conclusion, and, to the extent his conclusion may have come from communications with Brownie's employees or anyone else, these communications would be inadmissible hearsay.  *See, e.g.*, *Flushing Bank v. Green Dot Corp.,* 138 F. Supp. 3d 561, 579 n.11 (S.D.N.Y. 2015) (holding that "reports of calls from customer service representatives should be excluded as inadmissible hearsay"); *Burlington Coat*

- 12 -

*Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985) (a party opposing summary judgment "cannot rely on inadmissible hearsay in opposing a motion for summary judgment[ ] absent a showing that admissible evidence will be available at trial."). In any event, FCA US denies that these purported facts are material to whether its summary judgment motion should be granted, *see* Reply Brief; *see also Powell,* 364 F.3d at 84, and objects to Plaintiff's characterization of the fact as "material" as this is a legal argument inappropriate for a counter-statement of facts, as discussed supra.

**5(iv).** Plaintiff's additional facts under Statement 5(iv) are identical to those under Statement 3(ii). FCA US thus incorporates its response and objections to 3(ii).

**6(i)-(iv).** Plaintiff's additional facts under Statement 6(i)-(iv) are nearly identical to those under Statement 5(i)-(iv). FCA US thus incorporates its responses and objections to 5(i)-(iv).

**6(v).**    The fact that this defect is a safety risk is stated by Plaintiff's expert, ███. (*See*, ███ Report at pp. 5-6, Exh. 19)

**FCA US RESPONSE**: FCA US denies that this purported fact is material to whether its summary judgment motion should be granted. *See* Reply Brief; *see also Powell*, 364 F.3d at 84. FCA US also denies the purported fact on the basis that the only support cited for it is an unsworn expert report, which is inadmissible and insufficient as a matter of law to defeat summary judgment. *See Berk*, 380 F. Supp. 2d at 352.

**6(vi).**    The facts pertaining to Defendant's knowledge that this was not a "wearing out" but a materials defect are legion in this case and a sampling of the evidence demonstrating that prior knowledge is set forth in Response 2(i) through (xi) above.

**FCA US RESPONSE**: FCA US incorporates its responses and objections to 2(i) through (xi).

**6(vii).**        In addition, the following additional facts are material and which demonstrate Chrysler considered alerting consumers and then rejected the plan when the price tag for the proposed Customer Satisfaction program was approximately $400 million:

> a)        Chrysler considered its options for a field action or extended warranty and tasked its employees with drafting a Customer Satisfaction Notification (CSN) document. The resulting CSN recounted the background of the AL2000 valve stem and nut defect, forecasted the expected volume of warranty claims, and summarized reports of the defect in the field, including CAIR records, VOQs [NHTSA Vehicle Owner Quality reports like those excerpted above], and QNA (Quality Narrative Analyzer) field reports. *See* Exh. 13, at MCPA037931. The CSN went on to state that "Chrysler Group LLC is not aware of any accidents or injuries related to this issue *(if true)*." *Id*. (emphasis supplied).

**FCA US RESPONSE**:  FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell*, 364 F.3d at 84. Furthermore, the Customer Assistance Inquiry Record ("CAIR") upon which Plaintiff relies is inadmissible hearsay within hearsay.  *See, e.g., Flushing Bank*, 138 F. Supp. 3d at 579 n.11.  The document, thus, cannot be relied upon to defeat summary judgment.  *See Burlington Coat Factory Warehouse Corp.*, 769 F.2d at 924.

> b)        As shown above, Chrysler was well aware of the safety issues created by the defect. The CSN document ended with the "Recommendation" to "[p]rovide an extended warranty for the TPM sensor" *Id.*

**FCA US RESPONSE**:   FCA US denies Plaintiff's unsupported characterization of the cited problem as a "safety issue."  FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell*, 364 F.3d at 84.

   c) In the face of this well documented recommendation, Chrysler rejected providing an extended warranty or taking any field action due to the "significant cost"— approximately $400 million—and the fact that supplier did not have the production capacity. *See* Email from ████ (Aug. 17, 2011), Exh. 43 ("There was no extended warranty or field action for this item. The supplier did not have the capacity and the price tag was approx $400M.").

**FCA US RESPONSE**:   Plaintiff has not included an "Exhibit 43" in his response to Defendant's Motion for Summary Judgment, which violates L.R. 7.1(a)(3) insofar as it does not supply a specific citation to the record.  Thus, FCA US denies this purported fact.  Regardless, FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell*, 364 F.3d at 84.

**7(i).** In addition, Plaintiff has been driving for about 44 years, mostly in the Buffalo area, where it is freezing cold in the winter and a substantial amount of salt is used on the roads in the winter, and has never had a single valve stem fail on any other vehicle, yet has had all four (4) TPMS valve stems fail on the Grand Caravan (Hrom. Dep., pp. 248-249), thus raising a disputed issue of fact with regard to Statement No. 7.

**FCA US RESPONSE**: FCA US denies that the purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell*, 364 F.3d at 84.

**12(i).**        ████████, the owner of Brownie's, in his deposition taken October 8, 2019 ("████ Dep."), testified that during the February 12, 2013 service, the original TPMS units remained on the Vehicle and were not replaced. (Exh. 21, ████ Dep., p. 88-92).

**FCA US RESPONSE**: FCA US denies this purported fact. ████ testified that he did not believe he was personally involved with the repair, that he "can't swear to whatever did or didn't happen here because [he was not] involved," and "[a]ll [he] know[s] is what's reflected … on the invoice itself" (which shows four new valve stems were installed). *See* ECF #294-4, ████ Dep., pp. 125-27.

**12(ii).**        ████ further testified that if the TPMS modules had been replaced, that would have been reflected in the price paid and affected the invoice price paid, as those modules cost Brownie's wholesale, approximately $30-40 plus labor, and he testified that Brownie's would not have replaced four TPMS modules for free (Exh. 21, ████ Dep., p. 91)

**FCA US RESPONSE**:  FCA US incorporates its response and objections to 12(i).

**12(iii).**        ████ testified that the original TPMS units on the Grand Caravan were not replaced at that time by Brownie's (████ Dep., p. 91:11-23).

**FCA US RESPONSE**: FCA US incorporates its response and objections to 12(i).

**12(iv).**        In fact, ████ stated clearly (████ Dep., 92:3-9):

> They wouldn't have been removed. The TPMS module mounts not to the tire. It mounts to the wheel itself. So when you change a tire, you don't actually have to remove the TPMS from the wheel.

**FCA US RESPONSE**:  FCA US incorporates its response and objections to 12(i).

**12(v).**        ████ agreed that the four original Chrysler TPMS modules on the Grand Caravan remained intact after the four tires were replaced. (████ Dep., 92:18-23).

**FCA US RESPONSE**:  FCA US incorporates its response and objections to 12(i).

**12(vi).**    The notation referenced by Defendant was, according to ▮▮▮▮, an incorrect carryover from before the time of TPMS units and was included (albeit inaccurately) on every form invoice for new tires at the time, regardless of whether the valve stems were actually replaced (▮▮▮▮ Dep. 88-89).

**FCA US RESPONSE**:   FCA US incorporates its response and objections to 12(i) and also denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell*, 364 F.3d at 84.

**12(vii).**    Defendant is aware of the misleading nature of the statement it makes because Defendant's counsel actually prepared the declaration which Mr. ▮▮▮▮ signed and never advised him to have an attorney review it with him. (▮▮▮▮ Dep. pp. 55-56, 69).

**FCA US RESPONSE**:   FCA US incorporates its response and objections to 12(i) and also denies the assertion that the declaration was somehow "misleading" as it is unsupported by the testimony cited, and denies that this purported fact is material to whether summary judgment should be granted.  *See* Reply Brief; *see also Powell*, 364 F.3d at 84.

**12(viii).**    If Chrysler's attorneys told him that Mr. Hromowyk was in possession of three of the TPMS models, he would have never signed that Declaration (▮▮▮▮ Dep. p. 68).

**FCA US RESPONSE**:   FCA US denies this purported fact.  When he was deposed, Hromowyk, through his counsel, tried to discredit ▮▮▮▮ testimony by asking ***hypothetical*** questions, wherein ▮▮▮▮ was told to assume that "there's no question" that Hromowyk "has three of his four TPMS modules, and those three TPMS modules were removed and replaced by your body shop."  ECF #294-4, pp. 18-19.  ▮▮▮▮ admitted that, ***based on the assumption asked of him***, it was "***possible***" that Hromowyk asked to have the removed TPMS units returned to him and that it was not noted on the repair orders.  *Id.*  But, ▮▮▮▮ reconfirmed what he had attested

to in his declaration, *i.e.,* that Brownie's has **no records** and **no information** even suggesting that

those components were saved or returned to Hromowyk:

> Q. Other than [Plaintiffs' counsel's] representation to you that Mr.
> Hromowyk thinks he has something that was returned to him, are you
> aware of any evidence anywhere that suggests those components were not
> thrown in the trash?
>
> A. *No* …
>
> Q. Do you have any reason whatsoever to think that the TPMS components
> removed from Mr. Hromowyk's vehicle in 2017 and 2018 were not
> thrown in the trash?
>
> A. ***No, I do not.***
>
> Q. As far as you know and as far as Brownie's records and personnel know,
> they were thrown in the trash, right?
>
> A. ***Right.***

*Id.* at pp. 124:17-22; 125:7-15 (emphases added); *see also id.* at pp. 121-22.  At his deposition,

█████ actually confirmed that all of the information he attested to in his declaration is true and

accurate.  ECF #294-4, p. 128.  FCA US also denies that this purported fact is material to

whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364

F.3d at 84.

**14.**     First, Plaintiff testified at his deposition that he did not see four new TPMS units

added to the price on the invoice so he assumed they were not added (Hrom. Dep. 240-41).

**FCA US RESPONSE**:  FCA US denies that this purported fact is material to whether its

summary judgment motion should be granted.  *See* Reply Brief; *see also Powell*, 364 F.3d at 84.

**14(i)-(viii).**  Plaintiff's additional facts under Statement 14(i)-(viii) are identical to those

under Statement 12(i)-(vii).  FCA US thus incorporates its responses and objections to 12(i)-

(viii).

18.    Admits.  But none of the components had anything to do with the TPMS units, as none of the original TPMS units were replaced during the February 12, 2013 visit to Brownie's. See ███ Dep., 88-93; See also, Hrom. Decl. ¶¶ 5-7.

**FCA US RESPONSE:**    FCA US denies the purported fact on the basis that the referenced documents do not support it.   ███ testified that "[a]ll [he] know[s] is what's reflected … on the invoice itself" (which shows four new valve stems were installed).  *See* ECF #294-4, ███ Dep., pp. 125-27.  Hromowyk's declaration is also insufficient because any of his purported "knowledge" of this fact just stems from his (mis)reading of ███ deposition testimony, and thus is inadmissible hearsay.  *See Burlington Coat Factory Warehouse Corp*, 769 F.2d at 924.

19.    Admits.  But none of the components had anything to do with the TPMS units, as none of the original TPMS units were replaced during the February 12, 2013 visit to Brownie's. See ███ Dep., 88-93; *See also*, Hrom. Decl. ¶¶ 5-7.

**FCA US RESPONSE:**    FCA US denies the purported fact on the basis that the referenced documents do not support it.   ███ testified that "[a]ll [he] know[s] is what's reflected … on the invoice itself" (which shows four new valve stems were installed).  *See* ECF #294-4, ███ Dep., pp. 125-27.  Hromowyk's declaration is also insufficient because any of his purported "knowledge" of this fact just stems from his (mis)reading of ███ deposition testimony, and thus is inadmissible hearsay.  *See Burlington Coat Factory Warehouse Corp*, 769 F.2d at 924.

20.    Denies. Neither page cited by Defendant makes the statement which Defendant asserts in Statement No. 20. The only thing close is that on page 142, Mr. Hromowyk answered affirmatively to the question asking if, with regard to the left front tire that failed in July 2015,

this was the first time he had gone to put pressure in using that stem since 2013 (Hrom. Dep., 142:7-11).

   **FCA US RESPONSE**: Defendant FCA admits to a typographical error in its original statement of material facts and directs Plaintiff and the court to page 127 of Hromowyk's deposition, where Hromowyk indicated that he had not added air to the tires of his vehicle since the 2013 repair.  *See* Hrom. Dep., 127:8-11.

   **22**.    Denies.  This is a disputed fact based on the fact that all three other nuts split due to stress corrosion cracking and that the original TPMS units were made of AL2000 (e.g., see ██████ Decl.), the nut that came off and put Mr. Hromowyk and his wife in danger when the tire suddenly deflated, the nut missing was the result of premature corrosion due to stress corrosion cracking or, alternatively, a question of fact with respect to that is raised. The fact that Defendant's CAIR records indicate significant number of failures (See Exh.'s 22 & 23) and Defendant had knowledge of the premature corrosion resulting from the defective alloy used (See Response to No. 2 at (i) through (xi) and Response to No. 6 at (i) through (ii)), is evidence supporting this factual assertion.

   **FCA US RESPONSE:**   As set forth in Defendant's response to Plaintiff's Counter-Fact 6(vii)(a), the CAIR document is not competent summary judgment evidence. *See Flushing Bank*, 138 F. Supp. 3d at 579 n.11; *Burlington Coat Factory Warehouse,* 769 F.2d at 924.  FCA US also denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

   **23**.    Denies. In addition to Plaintiff's Response to Statement No. 22, which is incorporated herein, Plaintiff adds the following: The page cited by Defendant does not make the statement put forth as the alleged "undisputed fact" in Defendant's No. 23. In particular, Plaintiff

did not and does not agree that someone might have taken it off. Mr. Hromowyk testified (145:3-6):

> Q:     You don't know if it was taken off by Brownie's and not replaced, right?
>
> A:     I don't think I would have gotten where I got if it was taken off Brownie's and replaced.

**FCA US RESPONSE**: FCA US's original statement Number 23 was that "Hromowyk does not ***know*** if the nut broke off, fell off, or if someone took it off." (Emphasis added). The fact that "Plaintiff did not and does not agree that someone ***might*** have taken it off" (emphasis added) does not contradict or negate Hromowyk's admission.

**24.**     Denies. See response to Statement No. 23 incorporated herein.

**FCA US RESPONSE**: FCA US incorporates its response to Plaintiff's Counter-Statement 23.

**25**.     Denies. This is a disputed fact based on the fact that all three other nuts split due to stress corrosion cracking and that the original TPMS units were made of AL2000 (e.g., *see* ███████ Decl.), the nut that came off and put Mr. Hromowyk and his wife in danger when the tire suddenly deflated, the TPMS failure was the result of premature corrosion due to stress corrosion cracking or, alternatively, a question of fact with respect to that is raised. The fact that Defendant's CAIR records indicate significant number of failures (See Exh.'s 22 & 23) and Defendant had knowledge of the premature corrosion resulting from the defective alloy used (See Response to No. 2 at (i) through (xi) and Response to No. 6 at (i) through (ii)), is evidence supporting this factual assertion.

**FCA US RESPONSE:** As set forth in Defendant's responses to Plaintiff's Counter-Facts 6(vii)(a), the CAIR document is not competent summary judgment evidence.

*See Flushing Bank*, 138 F. Supp. 3d at 579 n.11; *Burlington Coat Factory Warehouse,* 769 F.2d at 924.

26.     Plaintiff also required a new tire and, as was his general practice, received two new tires from Brownie's (Hrom. Decl. ¶10). The total bill was $398.35 (Hrom. Dep. 157).

**FCA US RESPONSE**: FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

28.     This was the same tire which had the failed, defective original TPMS unit that was repaired at the July 27, 2015 visit to Brownie's (Hrom. Dep. 159). The replacement of the TPMS unit on August 4, 2015 cost Plaintiff $97.65 (See Exh. 24).

**FCA US RESPONSE**: FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

31 (i).   The right-front TPMS unit was replaced on February 17, 2017 because the TPMS unit's nut appeared cracked (Hrom. Dep. 170:3-15). The TPMS nut also appeared corroded to Plaintiff (Hrom. Dep. 171:4-7).

**FCA US RESPONSE**: FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

31 (ii). Plaintiff checked the other units due to his experience with a failed TPMS unit (Hrom. Dep. 171:8-12).

**FCA US RESPONSE**:  FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

31 (iii).    The cost of repair was $96.67 after tax (Hrom. Dep. 174:10-12).

**FCA US RESPONSE**: FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

**31 (iv).**     Plaintiff requested that the service advisor give him the removed defective original TPMS unit and he took it home (Hrom. Dep. 174-75, 176:20-23).

**FCA US RESPONSE**:   Denied.   *See* ECF #281-4, ¶ 3; ECF #294-4, pp. 124-25. FCA US also denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

**31 (v).**     He sent it to counsel after receiving a shipping label to send it (Hrom. Dep. p. 178:8-13).

**FCA US RESPONSE**:   Denied.   *See* ECF #281-4, ¶ 3; ECF #294-4, pp. 124-25. FCA US also denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

**31 (vi).**     ███████████ admitted that he has no personal knowledge as to whether Mr. Hromowyk asked for his part back and "[i]t is possible that he asked him to save them and it's not on the order. That—that—I really can't speak for that myself." (█████ Dep., p. 19:11-13).

**FCA US RESPONSE**:  FCA US incorporates its response and objections to 12(viii).

**31 (vii).**     ███████ admitted that he was not the person who dealt with Mr. Hromowyk at Brownie's (*Id*., p. 21:10-15 & p. 26).

**FCA US RESPONSE**: FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

**31 (viii).**     ███████ testified that he has observed personally that certain model cars made by FCA have a higher rate of failure on TPMS valves than other vehicles (*Id*., p. 28:16-29:4). He has observed that Chrysler Town & Country and Dodge Caravan minivans have problems with the TPMS valve stems (█████ Dep., p. 29:8-12).

**FCA US RESPONSE**: FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

    **31 (ix).**    ███ observed that the aluminum TPMS stems and nuts on Chrysler vehicles such as Mr. Hromowyk's "were failing pretty regularly." (███ Dep. p. 36).

**FCA US RESPONSE**: FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

    **31 (x).**    When people come in and ask him why the valve stems are failing he tells them "corrosion" (███ Dep., 40:3).

**FCA US RESPONSE**: FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

    **31 (xi).**    Chrysler's attorneys never revealed to ███ that Plaintiff's counsel wanted to take his deposition (███ Dep., p. 43).

**FCA US RESPONSE**: FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84. Additionally, the portion of Mr. ███ declaration cited indicates he cannot recall whether or not FCA US's attorneys informed him Plaintiff's counsel wanted to depose him, *not* that he recalled for certain that FCA US's attorneys never informed him of this fact.  And, the fact is that Plaintiff never noticed his deposition prior to him signing a declaration.

    **31 (xii).**    Chrysler's attorneys never revealed to ███ before they had him sign the Declaration that the 3 TPMS units replaced by his shop were in the custody of Plaintiff's counsel. (███ Dep., p. 47).

**FCA US RESPONSE**: FCA US incorporates its response and objections to 12(viii).

**31 (xiii).**     If Chrysler's attorneys had told him that Mr. Hromowyk had the TPMS units, he never would have signed the Declaration which Defendant has used on this summary judgment motion. (█████ Dep., p 67-68).

**FCA US RESPONSE**:  FCA US incorporates its response and objections to 12(viii).

**33(i).**     Plaintiff brought the vehicle in because he found another crack, this time in the left rear TPMS unit (Hrom. Dep., p. 182).

**FCA US RESPONSE**: FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

**33(ii).**     Plaintiff requested that he be given possession of the defective replaced original TPMS unit (*Id.*, p. 184).

**FCA US RESPONSE**:  Denied.   *See* ECF #281-4, ¶ 3; ECF #294-4, pp. 124-25. FCA US also denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

**33(iii).**     After receiving it, he sent the unit to counsel (*Id.*, p. 188).

**FCA US RESPONSE**:  Denied.   *See* ECF #281-4, ¶ 3; ECF #294-4, pp. 124-25. FCA US also denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

**33(iv).**  Plaintiff's additional facts under Statement 33(iv) are identical to those under Statement 31(vi).  FCA US thus incorporates its response and objections to 31(vi).

**33(v).**  Plaintiff's additional facts under Statement 33(v) are identical to those under Statement 31(vii).  FCA US thus incorporates its response and objections to 31(vii).

**33(vi).**  Plaintiff's additional facts under Statement 33(vi) are identical to those under Statement 31(viii).  FCA US thus incorporates its response and objections to 31(viii).

**35 (i).**      Plaintiff brought the vehicle into Brownie's because he found another crack, this time in the right rear valve stem (Hrom. Dep., p. 189-190)

**FCA US RESPONSE**:  FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

**35 (ii).**      Plaintiff requested that he be given possession of the defective, replaced original TPMS unit. (Hrom. Decl., ¶14).

**FCA US RESPONSE**:  FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

**35 (iii).**      (The service advisor gave Hromowyk the TPMS unit, which stated on it "DAIMLERCHRYSLER." (Hrom. Decl. ¶14).

**FCA US RESPONSE**:  Denied.   *See* ECF #281-4, ¶ 3; ECF #294-4, pp. 124-25. FCA US also denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

**35 (iv).**      The cost of the replacement was $109.83 (Hrom. Decl., ¶14).

**FCA US RESPONSE**: FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  See Reply Brief; see also Powell, 364 F.3d at 84.

**35(v).**   Plaintiff's additional facts under Statement 35(v) are identical to those under Statement 31(vi).  FCA US thus incorporates its response and objections to 31(vi).

**35(vi).**   Plaintiff's additional facts under Statement 35(vi) are identical to those under Statement 31(vii).  FCA US thus incorporates its response and objections to 31(vii).

**38 (i).**      Defendant was in touch with Plaintiff for a recall which occurred on or about February 2016 when the vehicle had approximately 76,684 miles (Hrom. Dep., p. 165; Hrom. Decl. ¶4).

**FCA US RESPONSE**: FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84. The "recall" referenced had nothing to do with TPMS units, corrosion, or any issue in this case.

**38 (ii).**      Plaintiff also brought the vehicle to Defendant's dealer for service during the warranty period (Hrom. Dep., p. 112-113 & 114-115).

**FCA US RESPONSE**: FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

**38 (iii).**      On none of these occasions did Defendant or its dealer inform Plaintiff or reveal to Plaintiff that the TPMS units were defective or offer to replace them under warranty for him. (Hrom. Decl. ¶3).

**FCA US RESPONSE**: Notably, Hromowyk does not claim that he ever brought up the issue of TPMS units on the occasion that he took his vehicle to a dealership.  FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

**38 (iv).**      Defendants had knowledge that the original TPMS units on Hromowyk's vehicle were made of the defective AL2000 alloy and were prone to premature stress corrosion cracking but never informed him or instituted the Customer Satisfaction program they devised because they decided it would cost too much. See Plaintiff's Response to Statement 2 at (i) through (xi) incorporated herein by reference.

**FCA US RESPONSE**:  FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84. Furthermore, FCA US incorporates its response to Plaintiff's Counter-Statement 2(i)-(xi).

**39 (i).**      At no time during the purchase of the Grand Caravan did the Defendant FCA or its dealer inform Plaintiff or reveal anything about the TPMS sensors being defective or that they were subject to premature corrosion due to stress corrosion cracking or that there were newer sensors made from other materials which would not corrode. (Hrom. Decl., ¶ 2).

**FCA US RESPONSE**:  FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

**39 (ii).**      During the period the Vehicle was covered under warranty by Defendant, Plaintiff brought the Vehicle into the Defendant's dealership to be serviced on various occasions under warranty (Hrom. Dep., 111-112 & 114-115; Hrom Decl., ¶ 3). On none of these occasions did Defendant FCA or its dealer inform Plaintiff or reveal anything about the TPMS sensors being defective or that they were subject to premature corrosion due to stress corrosion cracking. (Hrom. Decl., ¶ 2). Nor did they inform Mr. Hromowyk that there were newer sensors made from other materials which would not corrode. Id. Nor did Defendant or its dealer offer to replace the defective TPMS units with non-defective ones.  *Id.*

**FCA US RESPONSE**:  Notably, Hromowyk does not claim that he ever brought up the issue of TPMS units on the occasion that he took his vehicle to a dealership.  FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

**39 (iii).**      In or about February 2016, Defendant communicated to Plaintiff that there was a recall concerning the Vehicle's ignition (Dep., p. 165; Hrom Decl., ¶4). Plaintiff, therefore,

had the Vehicle brought into Defendant's dealer and the repair done in February 2016 when the Vehicle had approximately 76,684 miles (Dep., p. 165). Defendant and its dealer were able to communicate to Plaintiff that there was a recall of the defective ignition unit, but never informed Mr. Hromowyk about the TPMS sensors being defective or that they were subject to premature corrosion due to stress corrosion cracking or that there were newer sensors made from other materials which would not corrode (Hrom Decl., ¶4). Nor did Defendant or its dealer offer to replace the defective TPMS units with non-defective ones.  *Id.*

**FCA US RESPONSE**:  Notably, Hromowyk does not claim that he ever brought up the issue of TPMS units on the occasion that he took his vehicle to a dealership.  FCA US denies that this purported fact is material to whether its summary judgment motion should be granted.  *See* Reply Brief; *see also Powell,* 364 F.3d at 84.

Dated:  October 28, 2019

Respectfully Submitted,

**COUGHLIN & GERHART, LLP**

By:   */s/ Alan J. Pope*
      Alan J. Pope
      Bar Enroll No. 301508
      apope@cglawoffices.com
      99 Corporate Drive
      Binghamton, New York 13904
      (607) 723-9511
      (607) 723-1530 (fax)

**THOMPSON COBURN LLP**
Kathy A. Wisniewski
kwisniewski@thompsoncoburn.com
Stephen D'Aunoy
sdaunoy@thompsoncoburn.com
Thomas L. Azar, Jr.
tazar@thompsoncoburn.com
Sharon B. Rosenberg
srosenberg@thompsoncoburn.com
One US Bank Plaza
St. Louis, Missouri 63101
(314) 552-6000
(314) 552-7000 (fax)

*Attorneys for FCA US LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 28th day of October, 2019, a copy of FCA US LLC's Response to Plaintiff's Counter-Statement of Material Facts was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.

By:   /s/ Alan J. Pope