**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**ROBERT TOMASSINI, on behalf of**
**himself and all others similarly situated;**
**THOMAS HROMOWYK,**

                                   **Plaintiffs,**

    **vs.**                                                      **3:14-CV-1226**
                                                                **(MAD/ML)**

**FCA US LLC,**

                                   **Defendant.**

_____

**APPEARANCES:**                          **OF COUNSEL:**

**PARKER WAICHMAN LLP –**              **DANIEL C. CALVERT, ESQ.**
**FL OFFICE**                          **JORDAN L. CHAIKIN, ESQ.**
27300 Riverview Center Boulevard,
Suite 103
Bonita Springs, Florida 34134
Attorneys for Plaintiffs

**LAW OFFICES OF ELMER**               **ELMER R. KEACH, III, ESQ.**
**ROBERT KEACH, III, P.C.**
One Pine West Plaza – Suite 109
Albany, New York 12205
Attorneys for Plaintiffs

**MIGLIACCIO & RATHOD LLP**            **JASON S. RATHOD, ESQ.**
412 H Street NE, Suite 302             **NICHOLAS A. MIGLIACCIO, ESQ.**
Washington, DC 20002
Attorneys for Plaintiffs

**KANTROWITZ, GOLDHAMMER &**           **GARY S. GRAIFMAN, ESQ.**
**GRAIFMAN, P.C.**                     **JAY I. BRODY, ESQ.**
747 Chestnut Ridge Road, Suite 200
Chestnut Ridge, New York 10977
Attorneys for Plaintiffs

**WHITFIELD BRYSON & MASON, LLP**      **GARY E. MASON, ESQ.**
5101 Wisconsin Avenue, NW
Suite 305
Washington, DC 20016
Attorneys for Plaintiffs

**COUGHLIN, GERHART LAW FIRM –**      **ALAN J. POPE, ESQ.**
**BINGHAMTON OFFICE**
P.O. Box 2039
99 Corporate Drive
Binghamton, New York 13902-2039
Attorneys for Defendant

**THOMPSON, COBURN LAW FIRM –**    **KATHY A. WISIEWSKI, ESQ.**
**ST. LOUIS OFFICE**                        **SHARON B. ROSENBERG, ESQ.**
One U.S. Bank Plaza                    **STEPHEN A. D'AUNOY, ESQ.**
St. Louis, Missouri 63101            **THOMAS L. AZAR, JR., ESQ.**
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On September 8, 2014, Plaintiff Robert Tomassini commenced this putative class action in state court, and Defendant FCA US LLC ("Chrysler") removed to the Northern District of New York on October 8, 2014. *See* Dkt. No. 1. On January 25, 2018, Plaintiff Tomassini moved for class certification on his claim for deceptive business practices under New York General Business Law Section 349 arising out of Defendant's alleged failure to disclose a defect in the valve stems of certain Chrysler minivans. *See* Dkt. Nos. 23, 194. The Court denied Plaintiff's motion. *See* Dkt. No. 228. Plaintiff Tomassini subsequently filed a motion for reconsideration or, in the alternative, to permit Thomas Hromowyk to intervene as an additional class representative. *See* Dkt. No. 230. The Court denied Plaintiff's motion to reconsider, but allowed Plaintiff to amend the complaint to include Mr. Hromowyk. *See* Dkt. Nos. 237, 240. On January 9, 2019, Plaintiffs Tomassini and Hromowyk filed an amended complaint alleging violations under Section 349, which became the operative pleading in this action. *See* Dkt. No. 243. Defendant subsequently filed a motion to dismiss, which was denied by the Court. *See* Dkt. Nos. 250, 256. On September

27, 2019, Defendant filed a motion for sanctions and a motion for summary judgment as to Plaintiff Hromowyk's claim.  *See* Dkt. Nos. 280, 281.  For the following reasons, Defendant's motions for sanctions and for summary judgment as to Plaintiff Hromowyk's claim is granted.

## II. BACKGROUND

On October 21, 2009, Plaintiff Hromowyk purchased a new, model-year 2010 Dodge Grand Caravan.  *See* Dkt. No. 280-1 at ¶ 1.  On February 12, 2013, Plaintiff Hromowyk took his vehicle to a third-party repair shop, Brownie's Auto Care ("Brownie's"), and replaced all four of the vehicle's tires.  *See id.* at ¶¶ 9, 11.  Plaintiff Hromowyk did not watch any part of the service performed on February 12, 2013.  *See id.* at ¶ 13.  The condition of the vehicle's Tire-Pressure Monitoring System ("TPMS") units at the time of the tire change is unknown and all of the parts removed were discarded by Brownie's.  *See id.* at ¶¶ 16, 18.

In July 2015, Plaintiff Hromowyk observed a low tire pressure warning, stopped to put air into the tires, and noticed that the nut on the front-left TPMS valve stem was "gone."  *See id.* at ¶ 20.  On July 27, 2015, Plaintiff Hromowyk took his vehicle to Brownie's and had the TPMS valve repaired with a "repair kit."  *See id.* at ¶ 25.  Plaintiff Hromowyk alleges that in August 2015, while driving on the highway, his tire rapidly deflated, and upon inspection, he noticed that the TPMS valve was missing.  *See* Dkt. No. 243 at ¶ 29.  On August 4, 2015, Plaintiff Hromowyk took the vehicle to Brownies and had the front-left TPMS unit replaced.  *See* Dkt. No. 280-1 at ¶ 27.  The TPMS unit removed on that date was discarded.  *See id.* at ¶ 28.

On February 17, 2017, Plaintiff Hromowyk took the vehicle to Brownie's and replaced the front-right TPMS unit.  *See id.* at ¶ 30.  Plaintiff claims that he requested that any parts that were removed be returned to him, although there is no record of such a request.  *See* Dkt. No. 294-4 at 64-65, 78.  On May 24, 2018, Plaintiff Hromowyk took the vehicle to Brownie's to replace the

left-rear TPMS unit after he noticed that the left-rear valve stem nut had cracked. *See* Dkt. No. 243 at ¶ 32. Finally, on April 11, 2019, Plaintiff Hromowyk had Brownie's replace the right-rear TPMS unit after he noticed that the valve stem nut had cracked. *See id.* at ¶ 34. Both parties agree that Plaintiff Hromowyk neither communicated with nor requested repairs from Defendant or any of its authorized dealerships for his vehicle's valve stems, TPMS units, or any corrosion issues prior to filing his complaint. *See id.* at ¶¶ 37-38.

Much of the factual allegations regarding the alleged defect and Defendant's knowledge thereof remain the same as those which have previously been described by the Court. *See* Dkt. No. 228 at 4-8. Presently before the Court are Defendant's motions for sanctions for spoliation and for summary judgment as to Plaintiff Hromowyk's claim. *See* Dkt. Nos. 280, 281.

### III. DISCUSSION

**A.      Defendant's Motion for Sanctions for Spoliation**

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). The district court is vested with wide discretion in determining the appropriate sanction. *See Reilly v. Nat-West Markets Group, Inc.*, 181 F.3d 253, 267 (2d Cir. 1999) (citation omitted). "The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation, but the power is limited to that necessary to redress conduct which abuses the judicial process." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2000) (citation omitted) *superseded by statute on other grounds*.

To secure spoliation sanctions based on the destruction or delayed production of evidence, a moving party must prove that: (1) the party having control over the evidence had an obligation

to preserve or timely produce it; (2) the party that destroyed or failed to produce the evidence in a timely manner had a "culpable state of mind"; and (3) the missing evidence is "relevant" to the moving party's claim or defense "such that a reasonable trier of fact could find that it would support that claim or defense." *Id.* (citation omitted).

If a party has an obligation to preserve evidence, the degree of the party's culpability and the amount of prejudice caused by its actions will determine the severity of the sanctions to be imposed. *See Henkel Corp. v. Polyglass USA, Inc.*, 194 F.R.D. 454, 456 (E.D.N.Y. 2000) (citations omitted). "Nonetheless, a court should never impose spoliation sanctions of any sort unless there has been a showing – inferential or otherwise – that the movant has suffered prejudice." *GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346, at 353 (S.D.N.Y. 2012) (citing *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 431 (S.D.N.Y. 2010)).

### 1. Duty to Preserve

Here, there is no dispute that Plaintiff Hromowyk was in control of the evidence at issue, as it was attached to the vehicle which he owned. *See* Dkt. No. 294 at 8. Defendant's motion for sanctions is predicated on three instances when Plaintiff Hromowyk directed a mechanic to remove the TPMS units on the vehicle at issue – once prior to and twice after the filing of his complaint. *See* Dkt. No. 281-1 at 5. Thus, the Court will examine Plaintiff Hromowyk's duty to preserve for each instance of alleged spoliation.

"The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) (citation omitted). "Pursuant to this obligation, 'anyone who anticipates being a party or is a party to a

lawsuit must not destroy unique, relevant evidence that might be useful to an adversary.'" *Kyoei Fire & Marine Ins. Co. v. M/V Mar. Antalya*, 248 F.R.D. 126, 144 (S.D.N.Y. 2007) (quoting *Zublake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003)).  "While a litigant is under no duty to keep or retain every [piece of evidence] in its possession once a complaint is filed, it is under a duty to preserve what it knows, or reasonably, should know is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72 (S.D.N.Y. 1991).

On February 17, 2017, when Plaintiff Hromowyk directed a mechanic to remove the first TPMS unit, he claims that he was unaware of any lawsuits related to corrosion of TPMS valve stems or nuts.  *See* Dkt. No. 294-1 at 43.  Despite this, Plaintiff Hromowyk asked for the alleged defective part to be returned to him.  However, when asked why he requested that the TPMS unit be returned to him, Plaintiff Hromowyk testified that he was told by counsel to save the parts.  *See id.* at 45.  Although Plaintiff Hromowyk was not entirely sure when he was first contacted by an attorney, he indicated that he would not have been told to keep the TPMS unit by anyone else. *See id.*  Therefore, although Plaintiff Hromowyk had not yet filed his complaint, there was reason to believe that the TPMS unit would be relevant to future litigation.  Thus, Plaintiff Hromowyk was under a duty to preserve evidence when he removed the TPMS unit on February 17, 2017.

On March 10, 2017, twenty-eight days after the first TPMS unit was removed, Plaintiff Hromowyk filed his lawsuit against Defendant.[1]  Subsequently, Plaintiff Hromowyk directed a

---

[1] Plaintiff Hromowyk initially asserted his claim in *Spratley v. FCA US LLC*, No. 3:17-CV-62 (N.D.N.Y.).  Plaintiff Hromowyk subsequently moved to intervene in this action and was added as a Plaintiff with the filing of the amended complaint on January 1, 2019.  *See* Dkt. No. 243.

mechanic to remove two TPMS units from his vehicle on May 24, 2018 and April 11, 2019.  *See* Dkt. No. 294-1 at 46, 48.  Certainly, following the filing of his complaint, Plaintiff Hromowyk had a duty to preserve all evidence relevant to the litigation.  Because Plaintiff Hromowyk's claim alleged a defect in the TPMS unit, he certainly had a duty to preserve relevant evidence, including the TPMS units, beginning March 10, 2017.

### 2. Culpable State of Mind

A party seeking spoliation sanctions must show that evidence at issue was "destroyed with a culpable state of mind."  *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 92, 109 (2d Cir. 2001).  "Failures to preserve evidence 'occur along a continuum of fault – ranging from innocence through the degrees of negligence to intentionality.'"  *Rabenstein v. Sealift, Inc.*, 18 F. Supp. 3d 343, 362 (E.D.N.Y. 2014) (quoting *Reilly*, 181 F.3d at 267).  "A culpable state of mind 'must, at a minimum, constitute simple negligence.'"  *Id.* (quotation and other citations omitted).  As the Second Circuit has noted, "the 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed 'knowingly, even without intent to breach a duty to preserve it[.]'"[2] *Residential Funding Corp.*, 306 F.3d at 108 (quoting *Byrnie*, 243 F.3d at 109).

Despite Plaintiff Hromowyk's acknowledgment that he was in control of the evidence, he argues that he did not act with a culpable state of mind.  *See* Dkt. No. 294 at 8.  Rather, Plaintiff Hromowyk argues that he acted reasonably to remove a failing car part in order to ensure the safety of the vehicle.  *See id.* at 9-10.  Further, Plaintiff Hromowyk argues that the evidence was not destroyed and is available for inspection.  *See id.* at 10.

---

[2] Although courts in this circuit have noted that the Circuit's holding in *Residential Funding Corp.* was altered by the 2015 amendments to Rule 37 of the Federal Rules of Civil Procedure, that amendment relates to electronic documents and is inapplicable here.  *See Resnik v. Coulson*, No. 17-CV-676, 2019 WL 2256762, *11 (E.D.N.Y. Jan. 4, 2019); *Scalpi v. Amorim*, No. 14-CV-2126, 2018 WL 1606002, *16 (S.D.N.Y. Mar. 29, 2018).

Initially, as the Court describes in greater detail below, the TPMS units were destroyed, or, at a minimum, significantly altered.  The owner of the mechanic's shop testified that it can take significant force to remove the TPMS unit if the nut is rotted or corroded.  *See* Dkt. No. 294-4 at 111.  This additional force would likely create additional stress on the part and could result in the creation or exacerbation of cracking of the part.  *See id.* at 116-17.  In fact, at some point during the removal process, one of the TPMS units broke into multiple pieces, as evidenced by the photograph Plaintiff Hromowyk attaches to his motion.  *See* Dkt. No. 294-3.  Because Plaintiff Hromowyk removed the pieces from his vehicle, with enough force to cause at least one module to break into multiple pieces, it is impossible to determine whether the cracks in the TPMS unit, if any, would have been present absent the significant force necessary to remove the TPMS unit from the car itself.  Thus, the evidence was, at a minimum, materially altered.

Finally, although Plaintiff Hromowyk's actions in replacing the TPMS units may have been motivated by his interest in keeping his vehicle safe, he acted with the purpose of removing the TPMS units from the vehicle, knowing that they were the entire basis of this lawsuit.  Thus, despite Plaintiff Hromowyk's potentially well-intentioned motives, his removal of the TPMS units was intentional.  *See Residential Funding Corp.*, 306 F.3d at 108.  Accordingly, the Court finds that Plaintiff Hromowyk acted with a culpable state of mind when he removed the TPMS units.

### 3. Evidence Relevant to the Litigation

"The court's role in evaluating the 'relevance' factor 'is limited to insuring that the party seeking the [adverse] inference ha[s] adduced enough evidence of the contents of the missing materials such that a reasonable juror could find in its favor.'"  *Poux v. County of Suffolk*, No. 09-CV-3081, 2012 WL 1020302, *19 (E.D.N.Y. Mar. 23, 2012) (quoting *Residential Funding*, 306 F.3d at 109 n.4).  "Such a showing can be made on the basis of extrinsic evidence."  *Orbit One*

*Commc'ns, Inc.*, 271 F.R.D. at 438 (citing *Residential Funding*, 306 F.3d at 109).  Where the missing evidence was allegedly destroyed negligently (as opposed to with a higher degree of culpability), "[i]t is not sufficient for the moving party merely to point to the fact that the opposing party has failed to produce requested information." *Id.* at 439 (citing *Mitchell v. Fishbein*, No. 01-CV-2760, 2007 WL 2669581, *5 (S.D.N.Y. Sept. 13, 2007)).  In other words, the moving party must base its relevancy argument upon something more than "pure speculation." *Sovulj v. United States*, No. 98-CV-5550, 2005 WL 2290495, *5 (E.D.N.Y. Sept. 19, 2005) (citation omitted).  At the same time, although the party requesting the adverse inference bears the burden of showing its favorability, "the burden placed on the moving party to show that the lost evidence would have been favorable to it ought not be too onerous, lest the spoliator be permitted to profit from its destruction." *Orbit One Commc'ns, Inc.*, 271 F.R.D. at 440 (citing *Residential Funding*, 306 F.3d at 109).

Here, the Court notes that the TPMS valve stems and nuts are perhaps the most important evidence in this case.  This action centers around whether the TPMS valve stems and nuts used by Defendant on Plaintiff Hromowyk's vehicle suffered from stress corrosion cracking due to the inferior composition of the part.  *See* Dkt. No. 243 at ¶¶ 1-6, 21.  In its motion for sanctions, Defendant argues that by removing the TPMS unit, Plaintiff Hromowyk permanently altered the component and prevented Defendant from being able to determine whether the valve actually suffered from stress corrosion cracking, or if the damage alleged was the result of some other force.  *See* Dkt. No. 296 at 9.  In response, Plaintiff Hromowyk argues that removal of the TPMS valve stems and nuts is not relevant to this litigation because removal "does not change the fact that it is susceptible to, and in fact suffered from, stress corrosion cracking due to exposure to road salt." *See* Dkt. No. 294 at 10.

Plaintiff Hromowyk claims that the analysis of his expert, Eric Sullivan, establishes that the cracking allegedly identified was caused because of exposure of the inferior part to road salt. *See id.* at 10 (citing Dkt. No. 294-9).  Noticeably absent from Mr. Sullivan's analysis is the effect that forcible removal of the part from the vehicle would have on the manifestation of microscopic cracks in the TPMS unit.  *See id.*  However, it is clear that the force used to remove the TPMS unit did, in fact, alter the part.  As Plaintiff Hromowyk's experts indicate, stress corrosion cracking is the result of both corrosion of the part and stress placed upon it.  *See* Dkt. No. 281-1 at 44-49, 55.  Plaintiff Hromowyk's expert opines that the stress of every day use of the vehicle contributes to cracking.  *See id.*  However, because the amount of force used to remove the TPMS unit was enough to break the TPMS valve nut into multiple pieces, it is equally likely any stress corrosion cracking that could be found on the parts was the result of the force used to remove it from Plaintiff Hromowyk's vehicle.  This constitutes a significant alteration.

Further, this part is central to the litigation in that Defendant would have relied upon their expert's analysis of the parts to dispute Plaintiff Hromowyk's allegation that the TPMS units suffered from stress corrosion cracking.[3]  Accordingly, the Court finds that the TPMS valve stems

---

[3] Additionally, although not dispositive as to its motion for sanctions, Defendant has raised concern that the parts which Plaintiff Hromowyk now claims are from the vehicle in question, were not the parts actually removed from his vehicle.  *See* Dkt. No. 281-1 at 14.  Contrary to Plaintiff Hromowyk's claims, there is a question as to whether the valves in Plaintiff Hromowyk's possession are, in fact, the same valves that were removed from his vehicle.  Plaintiff Hromowyk testified that he was not present for and did not observe any portion of the work performed on his car.  *See* Dkt. No. 294-1 at 31, 40, 46.  There were no videos or pictures taken of the work performed or parts removed.  *See id.* at 45, 49.  Additionally, on two of the three invoices for the removal of the TPMS valves, there was no indication that any parts were returned to Plaintiff Hromowyk.  *See* Dkt. No. 294-4 at 64-65, 78, 85.  The owner of the auto repair shop testified that the regular practice in the shop was to discard parts unless there was a specific instruction otherwise noted on the invoice.  *See id.* at 62, 119.  Even on the invoice that noted that parts were returned to Plaintiff Hromowyk, there is no notation specifically identifying the part saved.  *See* Dkt. No. 281-7.

(continued...)

and nuts are relevant to Defendant's defense.  Thus, Plaintiff Hromowyk's actions satisfy each of the requirements for spoliation.

### 4. Sanction

"The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge . . . and is assessed on a case-by-case basis." *Fujitsu Ltd.*, 247 F.3d at 436 (citations omitted).  "The sanction should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been in absent the wrongful destruction of the evidence by the opposing party.'" *West*, 167 F.3d at 779 (quotation and other citations omitted).  "'Outright dismissal of a lawsuit is within the court's discretion.'" *Id.* (quotation and other citations omitted).  "However, because dismissal is a 'drastic remedy,' it 'should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions.'" *Id.* (quotations omitted).

Here, Defendant requests that Plaintiff Hromowyk's claim be dismissed, or in the alternative, an adverse instruction be given at trial or Plaintiff Hromowyk be prohibited from relying upon any evidence removed from his vehicle in dispositive motions or at trial.  *See* Dkt. No. 281-1 at 15.  In opposition, Plaintiff Hromowyk repeats his argument that the TPMS units are available for inspection and that Defendant's delay in examining the modules weighs against the imposition of sanctions.  *See* Dkt. No. 294 at 10.

Defendant has demonstrated that it has suffered prejudice as a result of Plaintiff Hromowyk's intentional actions.  Specifically, because of the significant alterations made to the

---

[3](...continued)

11

TPMS units, Defendant is unable to inspect the TPMS units to determine whether the alleged

defect existed prior to their removal from the vehicle. As Plaintiff Hromowyk testified, his claim

is about whether the TPMS valve nuts suffered from stress corrosion cracking due to the part's

inferior composition. *See* Dkt. No. 294-1 at 28. The forcible removal of the TPMS nut resulted

in the nut being broken into multiple pieces. *See* Dkt. No. 294-3. Thus, although Plaintiff

Hromowyk claims that Defendant is still able to examine the relevant evidence — the chemical

composition of the TPMS unit — Defendant cannot determine whether the modules actually

suffered from stress corrosion cracking or whether the damage to the nut is the result of the force

used to remove the piece from Plaintiff Hromowyk's vehicle. This unquestionably prejudices

Defendant's ability to refute Plaintiff Hromowyk's claims regarding the manifestation of the

alleged defect.

In determining the appropriate sanction, the Court finds *Mooradin v. FCA US, LLC*, 286 F.

Supp. 3d 865 (N.D. Ohio 2017), instructive. In *Mooradin*, the plaintiff alleged that the

defendant's manufacturing process resulted in sand seeping into the radiators of the vehicles at

issue. *See id.* at 866-67. In response to a written discovery demand, the plaintiff agreed to

produce the vehicle for inspection. *See id.* However, before the vehicle was produced, the

plaintiff, at his attorneys' behest, took the vehicle to a mechanic and had the radiator flushed,

removing the radiator fluid at issue in the litigation from the subject vehicle. *See id.* The plaintiff

took the vehicle to be serviced without providing notice to the defendants. *See id.* The plaintiff

requested that the mechanic record the work conducted and keep anything that came out of the

radiator. *See id.* A video of the service was made and the plaintiff was given two large unlabeled

and unsealed jugs of liquid which the mechanic said came from the radiator flush. *See id.* The

court granted the defendant's motion for sanctions for spoliation and prohibited the plaintiff from

supporting their motion for class certification or any other dispositive motion with the evidence stemming from the liquids drained from the vehicle.  *See id.* at 870.  The court also disqualified the plaintiff from serving as a class representative.  *See id.*

The Court finds that a similar outcome is appropriate here.  Here, although Plaintiff Hromowyk was aware that the TPMS units were central to the litigation, he, with his counsel's knowledge, removed each of the parts without providing notice to Defendant.  Even more egregious, Plaintiff Hromowyk agreed to Defendant's written discovery demand seeking production of the vehicle for inspection on April 8, 2019.  *See* Dkt. No. 281-6 at 3.  Only days later, Plaintiff Hromowyk, with his attorneys' knowledge, removed the last remaining TPMS valve from his vehicle.  *See* Dkt. No. 281-7 at 2.  Although there was ample opportunity, neither Plaintiff Hromowyk nor his counsel provided notice to Defendant of this service.  *See* Dkt. No. 281-5 at 2-3.  Plaintiff Hromowyk neither observed the work done on his vehicle, nor were any videos or photographs taken of the work.  *See* Dkt. No. 294-1 at 31, 40, 46.  Additionally, there is a question as to whether the pieces returned to Plaintiff Hromowyk were the TPMS units removed from his vehicle.  As discussed above, Plaintiff Hromowyk and his counsel took intentional steps to destroy, or at a minimum, materially alter the most important evidence in this case.  Such action requires a significant response.

Accordingly, Plaintiff Hromowyk is barred from supporting his motion for class certification with any evidence stemming from the removal of the TPMS units from his vehicle.  Plaintiff Hromowyk may not present this evidence in briefing of any dispositive motions or at trial.  Finally, Plaintiff Hromowyk is disqualified from acting as a class representative because his

actions have made him an atypical member.  Specifically, Plaintiff Hromowyk's actions have given Defendant a number of defenses that would not apply against the class as a whole.[4]

## B.     Defendant's Motion for Summary Judgment[5]

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted).  Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted).  Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court must be satisfied that the citations to evidence in the record support the movant's assertions.  *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the

---

[4] At this time, the Court will not impose additional sanctions on Plaintiffs' counsel. However, the Court reminds Plaintiffs' counsel of their duties as officers of the Court and cautions them against such actions in the future.

[5] Although the Court has found that Plaintiff Hromowyk is disqualified from acting as a class representative in this matter, the Court will still address the pending motion for summary judgment, because he is still a member of the relevant class.

assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005) (quotation omitted). "However, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff.'" *Id.* (quoting *Anderson*, 477 U.S. at 252 (emphasis and alterations in original)). "To defeat summary judgment, therefore, nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts,' . . . and they 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quotations omitted).

## C.     Section 349 of the New York State General Business Law

Section 349 of the New York General Business Law ("Section 349") is "directed at wrongs against the consuming public." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 24 (1995). Section 349 "prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state and provides a cause of action to any person who has been injured by a violation of the section." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122 (2d Cir. 2013). Section 349 "requires a finding of conduct that is consumer-oriented and that would mislead a reasonable consumer causing actual injury." *Maurizio v. Goldsmith*, 230 F.3d 518, 522 (2d Cir. 2000) (internal quotations and alterations omitted). "To maintain a cause of action under Section 349, a plaintiff must show: (1) that the defendant's conduct is consumer-oriented; (2) that the defendant is engaged in a deceptive

15

act or practice; and (3) that the plaintiff was injured by this practice." *Heskiaoff v. Sling Media, Inc.*, 719 Fed. Appx. 28, 31 (2d Cir. 2017) (quotation and alterations omitted).

To establish that conduct is "consumer-oriented," a plaintiff must show that "the conduct at issue 'potentially affect[s] similarly situated consumers.'" *Wilson v. Northwestern Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (quoting *Oswego Laborers'*, 623 N.Y.2d at 26-27). "Although consumer-oriented conduct does not require a repetition or pattern of deceptive conduct, a plaintiff must 'demonstrate that the acts or practices have a broader impact on consumers at large.'" *Id.* (quotation omitted).

"As to the second element [of Section 349], whether a representation or an omission, the deceptive practice must be likely to mislead a reasonable consumer acting reasonably under the circumstances." *Heskiaoff*, 719 Fed. Appx. at 31 (quotation and alterations omitted). A deceptive practice "need not reach the level of common-law fraud to be actionable under section 349[.]" *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000) (citations omitted). "It is not necessary under [Section] 349 that a plaintiff establish the defendant's intent to defraud or mislead." *Nick's Garage, Inc.*, 875 F.3d 107, 124 (2d Cir. 2017) (quotations and alterations omitted). Rather, the "term 'deceptive practice' in Section 349 [has been] interpreted to mean acts which are dishonest or misleading in a material respect." *Id.* (quotation omitted).

### 1. Timeliness of Claim

Defendant argues that summary judgment should be entered in its favor because Plaintiff Hromowyk's claim is time-barred. *See* Dkt. No. 290-6 at 12. Specifically, Defendant argues that Plaintiff Hromowyk's claim accrued at the time of the purchase of the allegedly defective item. *See id.* Because Plaintiff Hromowyk did not file his claim until more than three years after he purchased the vehicle, Defendant argues that his claim is time-barred. *See id.* In response,

16

Plaintiff Hromowyk argues that the timeliness issue has already been decided by this Court at the motion to dismiss stage and cannot be re-litigated here. *See* Dkt. No. 295-1 at 19. In the alternative, Plaintiff Hromowyk also argues that the Court has previously found that Defendant actively sought to conceal a known material defect such that equitable tolling of the statute of limitations is appropriate. *See* Dkt. No. 295-1 at 20.

### a. The Law of the Case Doctrine

Plaintiff Hromowyk argues that Defendant's timeliness argument is based upon the same grounds decided by the Court at the motion to dismiss stage. *See* Dkt. No. 295-1 at 19. Plaintiff Hromowyk notes that the Court found that Plaintiff Hromowyk's allegations of post-sale concealment were sufficiently pleaded. *See id.* at 20.

The objective of the law-of-the-case doctrine "include[s] promoting efficiency and avoiding endless litigation by allowing 'each stage of the litigation [to] build on the last and not afford an opportunity to reargue every previous ruling.'" *In re Rezulin Liability Litigation*, 224 F.R.D. 346, 349-50 (quoting *Tri-Star Pictures, Inc. v. Leisure Time Prod., B.V.*, No. 88 Civ. 9127, 1992 WL 296314, *2 (S.D.N.Y. Oct. 6, 1992)) (citation omitted). Therefore, without good reason, "a court will 'generally adhere to [its] own earlier decision on a given issue in the same litigation.'" *Id.* at 350 (quoting *Tri-Star Pictures, Inc.*, 1992 WL 296313, at *2) (other citation omitted). However, the application of the law of the case doctrine is "'discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment.'" *Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87, 97 (2d Cir. 2013) (quotation omitted).

"[B]ecause of the divergent standard of review applicable to motions to dismiss and motions for summary judgment, the law of the case doctrine is inapposite to the Court's analysis of whether, after the close of discovery, genuine issues of fact have been raised which survive

17

summary judgment." *McAnaney v. Astoria Fin. Corp.*, 665 F. Supp. 2d 132, 142 (E.D.N.Y. 2009) (collecting cases).  In other words, "the doctrine would not preclude a district court from granting summary judgment based on evidence after denying a motion to dismiss based only on the plaintiff's allegations." *Maraschiello*, 709 F.3d at 97.

Here, the Court previously found Plaintiff Hromowyk's allegations sufficient to survive a motion to dismiss.  *See* Dkt. No. 256 at 8.  Specifically, the Court found that Plaintiff Hromowyk's allegations that Defendant engaged in post-sale concealment of a material defect sufficient to toll the statute of limitations.  *See id.* at 7-8.  This, however, does not preclude the Court from considering the propriety of equitable tolling in light of the evidence gathered during discovery.  *See Marachiello*, 709 F.3d at 97.  Accordingly, Defendant's timeliness argument is not barred by the law of the case doctrine and will be considered by the Court.

### b. Equitable Tolling

Defendant argues that although the Court found Plaintiff Hromowyk's allegations of material misrepresentations sufficient to toll the statute of limitations at the motion to dismiss stage, because this is a motion for summary judgment, Plaintiff Hromowyk cannot rely on his allegations, but must present actual evidence sufficient to toll the statute of limitations.  *See* Dkt. No. 280-6 at 15.  It is Defendant's contention that Plaintiff Hromowyk has failed to produce such evidence.  *See id.*  In support of this argument, Defendant cites Plaintiff Hromowyk's testimony in which he admitted that he never sought from Defendant any repairs or diagnoses regarding a corrosion issue on his vehicle.  *See id.*  This, Defendant contends, eliminates the possibility that Plaintiff Hromowyk received any misleading information from anyone connected with Defendant. *See id.*

Plaintiff Hromowyk has brought his claim pursuant to Section 349 of the New York State

General Business Law.  *See* Dkt. No. 243 at ¶ 123.  "The statute of limitations for [a Section 349]

claims is three years, and accrues when plaintiff becomes injured by the prohibited deceptive act

or practice."  *Parejas v. General Elec. Capital Servs.*, No. 10-CV-3348, 2011 WL 2635778, *3

(E.D.N.Y. July 5, 2011) (citation omitted).  Here, Plaintiff Hromowyk alleges two theories of

liability – one based on Defendant's pre-sale omissions and one based on Defendant's post-sale

omissions.  *See* Dkt. No. 256 at 8.  Regarding the alleged omissions made prior to the purchase of

the vehicle, Plaintiff Hromowyk's claim accrued as of the date of the purchase.  *See Miller v.*

*Hyundai Motor Am.*, No. 15-CV-4722, 2016 WL 5476000, *6 (S.D.N.Y. Sept. 28, 2016).  Thus,

Plaintiff Hromowyk's claim accrued when he purchased the vehicle at issue on October 21, 2009.

*See* Dkt. No. 280-1 at ¶ 1.  Plaintiff Hromowyk was required to file his claim by October 21,

2012.  However, Plaintiff Hromowyk did not file his claim until March 10, 2017.  *See* Dkt. No.

230-4.  Even if his claims were to relate back to the filing of the original complaint in this action,

Plaintiff Hromowyk would have missed the deadline, as this action was filed on October 8, 2014.

*See* Dkt. No. 1.[6]  However, the question remains whether the statute of limitations should be tolled

due to Defendant's alleged materially misleading conduct after Plaintiff Hromowyk's purchase of

the vehicle.

"Under New York law, the doctrines of equitable tolling or equitable estoppel 'may be

invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud,

---

[6] The post-sale portion of Plaintiff Hromowyk's claim would not be time-barred.  The post-sale portion of the claim accrued when Plaintiff Hromowyk was first injured by Defendant's alleged omissions, *i.e.*, at the time the first TPMS unit failed in July or August 2015.  *See* Dkt. No. 243 at ¶¶ 20,29; *see also Satler v. Dell, Inc.*, 775 F. Supp. 2d 474, 484-85 (E.D.N.Y. 2011); *Marshall v. Hyundai Motor America*, 51 F. Supp. 3d 451, 465-66 (S.D.N.Y. 2014).  Thus, this portion of the claim was timely when Plaintiff Hromowyk filed his complaint in March 2017. However, for the reasons described below, his claim would fail on the merits.

misrepresentations or deception to refrain from filing a timely action.'" *City of Syracuse v. Loomis Armored US, LLC*, 900 F. Supp. 2d 274, 293 (N.D.N.Y. 2012) (quoting *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007)). "Equitable tolling applies to avoid a statute of limitations bar 'if despite all due diligence [plaintiff] is unable to obtain vital information bearing on the existence of his claim.'" *Ramos v. Police Officer Maureen Engels*, No. 15-CV-1081, 2016 WL 3619534, *9 (E.D.N.Y. June 3, 2016) (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990)) (emphasis omitted). Accordingly, "[e]quitable tolling focuses on [a] plaintiff's awareness of the existence of the injury, not whom he may or may not sue." *Ramos*, 2016 WL 3619534, at *9 (citing *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 323 (2d Cir. 2004)). The Supreme Court has made "clear that equitable tolling does not require any conduct by the defendant." *Cada*, 920 F.2d at 451 (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946)). Thus, for this doctrine, "[t]he relevant question is not the intention underlying defendants' conduct, but rather whether a reasonable plaintiff in the circumstances would have been aware of the existence of a cause of action." *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 323 (2d Cir. 2004).

In contrast, "[w]hereas equitable tolling entitles plaintiff to have time not counted against him under the statute of limitations, '[e]quitable estoppel acknowledges that the statute has run, [and] is invoked to estop the defendant from asserting the defense because defendant's actions lulled the plaintiff into forbearing from bringing suit within the period of limitations.'" *Ramos*, 2016 WL 3619534, at *9 (quoting *Perez v. Policy Dept. of City of New York*, 872 F. Supp. 49, 52 n.2 (S.D.N.Y. 1994)). New York courts appear to have conflated these two doctrines, perhaps to the point where any attempt to distinguish them is now merely pedantic. *See, e.g.*, *Cada*, 920 F.2d at 451 (noting that "[e]quitable tolling is frequently confused . . . with fraudulent concealment").

However, regardless of the merits of the distinctions between the two doctrines, or whether they have been effectively merged under New York law, the evidence is insufficient to invoke either doctrine.

Where a plaintiff seeks to equitably toll a statute of limitations on the basis of fraudulent concealment, the plaintiff must establish that "'(1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's "discovery of the nature of the claim within the limitations period"; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled.'" *Koch v. Christie's Intern. PLC*, 699 F.3d 141, 157 (2d Cir. 2010) (quoting *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999)) (internal citation omitted).

"Where the same alleged wrongdoing that [underlies] the plaintiffs' equitable estoppel argument is also the basis of their tort claims, equitable estoppel will not lie." *Cusimano v. Schnurr*, 137 A.D.3d 527, 532 (1st Dep't 2016) (citation omitted). "There must be a 'later fraudulent misrepresentation . . . for the purpose of concealing the former tort.'" *Dowe v. Leeds Brown Law, P.C.*, No. 18-CV-11633, 2019 WL 6251254, *8 (S.D.N.Y. Nov. 22, 2019) (quoting *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 836 N.Y.S.2d 509, 868 N.E.2d 189, 198 (2007)). In other words, "[e]quitable tolling 'is triggered by some conduct on the part of the defendant after the initial wrongdoing; mere silence or failure to disclose the wrongdoing is insufficient.'" *Martin Hilti Family Tr. v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 471 (S.D.N.Y. 2015) (quoting *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 319 (S.D.N.Y. 2013)) (internal quotations omitted); *see also Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 789 (2012) ("[I]n cases where the alleged concealment consisted of nothing but defendants' failure to disclose the wrongs they had committed, [New York courts] have held that the defendants were not

21

estopped from pleading a statute of limitations defense").  Furthermore, "'concealment without actual misrepresentation' gives rise to equitable estoppel only when the plaintiff can 'demonstrate a fiduciary relationship which gave the defendant an obligation to inform him or her of facts underlying the claim.'"  *Dowe*, 2019 WL 6251254, at \*8 (footnotes omitted) (quoting *Zumpano v. Quinn*, 6 N.Y.3d 666, 816 N.Y.S.2d 703, 849 N.E.2d 926, 930 (2006)).  Ultimately, "'[w]hen deciding whether to toll the running of the statute of limitations, the issue is not whether [p]laintiff was in possession of all of the information necessary to prevail on his claims, but whether plaintiff had enough information to commence a lawsuit.'"  *Martin Hilti Family Trust*, 137 F. Supp. 3d at 467 (quotation omitted).

Defendant argues that Plaintiff Hromowyk never had any communications with Defendant about his vehicle's TPMS units or any related defects, and thus, cannot establish that he was affirmatively misled.  *See* Dkt. No. 280-6 at 15.  In contrast, Plaintiff Hromowyk claims that "plaintiff need not make a particular inquiry of a defendant to invoke fraudulent concealment." *See* Dkt. No. 295-1 at 24.  While it may be true that a plaintiff need not make a specific inquiry, there must either be affirmative misleading conduct or continued concealment with a fiduciary duty.  Therefore, the Court must determine whether Defendant engaged in affirmatively misleading conduct which prevented Plaintiff Hromowyk from filing his action within the applicable statute of limitations or whether there was a fiduciary duty between the parties such that Defendant was obligated to disclose knowledge of a defect.  *See Putter v. North Shore Univ. Hosp.*, 7 N.Y.3d 548, 552-53 (2006).

Plaintiff Hromowyk admits that he has not interacted with Defendant in any way regarding the TPMS units.  *See* Dkt. No. 295-1 at 23-24.  Further, the record is devoid of any representation – misleading or not – made by Defendant to Plaintiff Hromowyk regarding the TPMS units at any

point.  Plaintiff Hromowyk cites to a number of representations made to Defendant's customers about the TPMS units; however, the Court notes that none of the documents cited relate to Plaintiff Hromowyk.  *See* Dkt. No. 295-1 at 22 (citing Dkt. No. 224-1, 224-2, 295-8 at 1-47).  These alleged misrepresentations to other individuals are not sufficient to trigger equitable estoppel as to Plaintiff Hromowyk's claim.  *See Twesky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 445 (S.D.N.Y. 2014) ("[E]quitable estoppel is only 'appropriate where the plaintiff is prevented from filing an action within the applicable statute of limitations due to defendants' misconduct toward the potential plaintiff, not a community at large'") (quotation omitted).  Finally, there is no indication that because of a representation by Defendant, Plaintiff Hromowyk was not in possession of information sufficient to commence his lawsuit.  *See Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 483 (E.D.N.Y. 2011) ("[T]he issue is not whether plaintiff was in possession of all of the information necessary to prevail on his claims, but whether plaintiff had enough information to commence a lawsuit").

Because Defendant did not engage in affirmatively misleading conduct such that Plaintiff Hromowyk would be prevented from filing a complaint, his only remaining argument for the application of equitable tolling is that there was a fiduciary relationship between the parties such that Defendant was required to disclose knowledge of a defect.  *See Dowe*, 2019 WL 6251254, at *8.  Indeed, it appears that Plaintiff Hromowyk suggests that Defendant had such a duty, although he provides only minimal support for this argument.  *See* Dkt. No. 295-1 at 22-23.

"Where concealment without actual misrepresentation is claimed to have prevented a plaintiff from commencing a timely action, the plaintiff must demonstrate a fiduciary relationship which gave the defendant an obligation to inform him or her of facts underlying the claim." *Zumpano*, 6 N.Y.3d at 675 (quotation and alterations omitted); *see also Rockwell v. Ortho Pharm.*

*Co.*, 510 F. Supp. 266, 270 (N.D.N.Y. 1981) (citing *Gen. Stencils, Inc. v. Chiappa*, 18 N.Y.2d

125, 127, 219 N.E.2d 169, 170 (1966); *Erbe v. Lincoln Rochester Tr. Co.*, 13 A.D.2d 211, 214,

214 N.Y.S.2d 849, 852 (4th Dep't 1961)); *see also Murphy v. Morlitz*, 751 Fed. Appx. 28, 31 (2d

Cir. 2018) ("If the plaintiff alleges that a defendant breached a fiduciary duty, the defendant's

concealment of the facts underlying the claim provides a basis for equitable estoppel, even

'without actual misrepresentation'") (quoting *Zumpano*, 6 N.Y.3d at 675); *Doe v. Holy See (State*

*of Vatican City)*, 17 A.D.3d 793, 796 (3d Dep't 2005) ("Inasmuch as plaintiffs have failed to

demonstrate the existence of fiduciary relationships between themselves and defendants,

defendants are not equitably estopped from asserting the statute of limitations defense"); *Bank of*

*New York Mellon v. WMC Mortg., LLC*, 53 Misc. 3d 967, 972 n.5 (N.Y. Sup. 2016) ("As is

generally the case with fraud, when the defendant is plaintiff's fiduciary, a fraudulent omission, as

opposed to an affirmative misrepresentation, may be actionable") (citations omitted).

    A fiduciary relationship between buyer and seller does not automatically exist; Plaintiff

Hromowyk must establish that such a relationship existed by meeting the relevant pleading

standard.  That standard requires a showing "that there was a 'relationship founded upon trust or

confidence reposed by one person in the integrity and fidelity of another . . . in which influence

has been acquired and abused, in which confidence has been reposed and betrayed.'"  *Alley Sports*

*Bar, LLC v. SimplexGrinnell, LP*, 58 F. Supp. 3d 280, 290 (W.D.N.Y. 2014) (quoting *Henneberry*

*v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 459 (S.D.N.Y. 2006)).  Examples of such

informal fiduciary relationships . . . include 'priest and parishioner, bank and depositor, majority

and minority stockholder, and close friends or family members.'"  *Solutia Inc. v. FMC Corp.*, 456

F. Supp. 2d 429, 446 (S.D.N.Y. 2006) (quoting *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150-

51 (2d Cir. 1993)).  However, "one party's reliance on another party with superior expertise, by

itself, will not suffice to establish a fiduciary relationship." *Vannest v. Sage, Rutty & Co., Inc.*, 960 F. Supp. 651, 656 (W.D.N.Y. 1997) (citing *Boley v. Pineloch Assocs., Ltd.*, 700 F. Supp. 673, 681 (S.D.N.Y. 1988)). Indeed, in *Jordan v. Ford Motor Company*, the court found that "an automobile manufacturer [did] not . . . have a fiduciary relationship with the plaintiff which would give rise to a duty to inform her that she had a cause of action against the company because of a defect in her automobile[.]" *Rockwell*, 510 F. Supp. at 270 (citing *Jordan v. Ford Motor Co.*, 73 A.D.2d 422, 426 N.Y.S.2d 359 (4th Dep't 1980)).

Here, there is no indication that the parties had any relationship beyond that of a buyer and seller. Thus, Plaintiff Hromowyk cannot establish the requisite fiduciary relationship to prevail on his request for equitable tolling where Defendant merely concealed information. *See Jordan*, 73 A.D.2d at 424 ("A party against whom a claim exists is not, without more, under a duty to inform the injured party thereof, and such failure to inform does not constitute the kind of fraudulent concealment which gives rise to an estoppel") (citing *De Vito v. New York Cent. System*, 22 A.D.2d 600, 257 N.Y.S.2d 895 (1st Dep't 1965)); *see also Rockwell*, 510 F. Supp. at 270. Accordingly, Plaintiff Hromowyk's claim is time-barred.

In the alternative, Plaintiff Hromowyk claims that Defendant's arguments apply only to the pre-sale aspect of his claim and that Defendant has not moved for summary judgment on the post-sale aspect of Plaintiff Hromowyk's claims. *See* Dkt. No. 295-1 at 24-25. In response, Defendant argues that equitable tolling would be inappropriate in this case – for both the pre-sale and post-sale conduct – because Plaintiff Hromowyk does not allege a separate incident of fraudulent misrepresentation for the purposes of concealing the former misrepresentation. *See* Dkt. No. 280-6 at 14-15. Rather, Defendant characterizes any post-sale omission as merely a continuation of the alleged omissions made at the time of the sale of the vehicle. *See* Dkt. No. 297 at 10-11.

25

Defendant argues that such a continuation does not constitute an omission made after the fact such that equitable tolling would be appropriate.  *See id.*

For the same reasons described in the Court's previous decision, the Court is not convinced by this argument.  *See* Dkt. No. 256 at 7-8.  However, equitable tolling would be inappropriate for the post-sale conduct for the same reasons the Court described above: Defendant did not make any affirmative misrepresentations to Plaintiff Hromowyk or have a fiduciary relationship with him such that he was prevented from filing a claim.  Thus, equitable tolling could not be applied to either the pre-sale or post-sale portion of Plaintiff Hromowyk's claim.  Accordingly, Defendant's motion for summary judgment is granted because Plaintiff Hromowyk's claim is time-barred.

### 2. Materially Misleading Conduct

In the alternative, Defendant argues that Plaintiff Hromowyk's claim must fail because he cannot prove that Defendant's alleged omission was materially misleading.  *See* Dkt. No. 280-6 at 17.  Specifically, Defendant claims that an omission is not materially misleading if the ultimate outcome is one that was expected by the plaintiff.  *See id.*  In response, Plaintiff Hromowyk argues that Defendant relies upon an incorrect subjective standard, rather than examining whether the omission is materially deceptive or misleading "to 'a reasonable consumer acting reasonably under the circumstances.'"  *See* Dkt. No. 295-1 at 28.

With regard to the second element of a Section 349 claim, the New York Court of Appeals has adopted "an objective definition of deceptive acts and practices."  *Oswego*, 85 N.Y.2d at 26.  The test is whether the misrepresentation or omission is "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Heskiaoff*, 719 Fed. Appx. at 31 (quotation and alterations omitted).  It should be noted that this test can be determined as a matter of law or fact depending on the case.  *Oswego*, 85 N.Y.2d at 26.

In the case of omissions, as alleged here, the General Business Law "does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation.  The scenario is quite different, however, where the business alone possesses material information that is relevant to the consumer and fails to provide this information." *Id.*  A business' failure "to disclose to consumers material, relevant information the business alone possesses is actionable under [Section] 349 without reference to any special relationship between the consumer and the business." *Chiarelli v. Nissan N. Am., Inc.*, No. 14-CV-4327, 2015 WL 5686507, *12 (E.D.N.Y. Sept. 25, 2015) (internal citation and quotation marks omitted).  Said another way, "whether there is a legal duty is not the operative focus under the GBL." *Id.*

Defendant argues that it did not engage in materially misleading conduct because Plaintiff Hromowyk was aware that the vehicle he purchased would require maintenance for which he would be required to pay.  *See* Dkt. No. 280-6 at 17-18.  Defendant contends that because Plaintiff Hromowyk admitted that he expected his vehicle would need repairs beginning at approximately 50,000 miles and that he would have to pay for them, the repairs associated with the replacement of the TPMS units were to be expected.  *See id.* at 17-19.  Defendant suggests that no reasonable consumer would expect that the purchased vehicle would be free of defects or that the owner would not incur the cost of repairs.  *See id.*; Dkt. No. 297 at 13.  Defendant made a nearly identical argument in its motion for summary judgment on Plaintiff Tomassini's claim.  *See* Dkt. No. 84-4 at 10-12.  For the same reasons described in great detail in the Court's previous decision, the Court finds Defendant's arguments on this point unpersuasive.  *See* Dkt. No. 155 at 10-13.

Again, Defendant frames the alleged deceptive practice in overly broad terms, *i.e.*, the cost of general repairs.  *See* Dkt. No. 280-6 at 17-18.  Defendant argues that because Plaintiff

Hromowyk was aware that he would be required to pay for vehicle repairs, he was not misled as to a material fact.  *See id.*  However, Plaintiff Hromowyk alleges a specific omission – failure to disclose a latent defect in the materials used in the valve stem on the TPMS units – and that Defendant knew of this defect.  *See* Dkt. No. 243 at ¶ 128.

Additionally, the record evidence does not establish that the terms of the bargain were fully disclosed.  Plaintiff Hromowyk has submitted evidence demonstrating that as early as January 2009, Defendant was aware of a recommendation to change the aluminum alloy series.  *See* Dkt. Nos. 293-5, 295-6.  Plaintiff Hromowyk also submitted a materials engineering lab report prepared by Defendant which documents an analysis of the valve stem fractures and found that the fractures were caused by stress corrosion cracking.  *See* Dkt. No. 293-18 at 44.  Yet another report details an analysis of a failed TPMS unit and valve stem by Defendant in which Defendant concluded that the failure of the TPMS unit was most likely caused by stress corrosion cracking due to the aluminum alloy's interaction with a known road de-icer.  *See id.* at 56-57.  An email from Defendant, dated April 2010, explains that it is common for stress corrosion cracking to go undetected prior to devastating and unexpected failure because the metal appears shiny but acutally contains cracks.  *See* Dkt. No. 293-12 at 2-3.  This email shows that Defendant even considered communicating these findings with consumers.  *See id.*

Accordingly, the Court finds that there is evidence that material information was within Defendant's exclusive knowledge and that Plaintiff Hromowyk did not disclose this information to consumers.  Plaintiff Hromowyk's knowledge that he likely would incur the costs of maintaining his vehicle does not preclude his Section 349 claim for Defendant's failure to disclose a known manufacturing defect.  Accordingly, Defendant's motion fails as to this point.  However, Plaintiff Hromowyk's claim would fail for lack of evidence of injury.

### 3. Evidence of Causation and Injury

As an alternative argument in support of summary judgment, Defendant argues that

Plaintiff Hromowyk's Section 349 claim must fail because there is no competent evidence of

causation or injury. *See* Dkt. No. 280-6 at 16. Defendant argues that Plaintiff Hromowyk must

prove that he actually suffered an injury as a result of the allegedly deceptive act or practice and to

do that, he must establish that the alleged defect manifested on the part installed on his vehicle.

*See id.* at 16.

Plaintiff Hromowyk has pleaded two actual injuries: (1) purchasing the vehicle or paying

more for it than he would have had he known of the defect and (2) expending money to replace

the defective valve stems. *See* Dkt. No. 295-1 at 25. Allegations that a plaintiff purchased a

product at an inflated price as a result of the defendant's deception is a sustainable injury under

Section 349. *See Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 481

(S.D.N.Y. 2014) (citing *Baron v. Pfizer, Inc.*, 42 A.D.3d 627, 629 (3d Dep't 2007)). However, "a

plaintiff must prove 'actual' injury to recover under [Section 349], though not necessarily

pecuniary harm." *Stutman*, 95 N.Y.2d at 29 (ctiations omitted). Of course, a "plaintiff . . . must

show that the defendant's 'material deceptive act' caused the injury." *Id.* (quoting *Oswego*, 85

N.Y.2d at 26). "New York law requires a manifested defect for a plaintiff to recover on [a Section

349] claim." *In re GM LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 429-30 (S.D.N.Y. 2017)

(collecting cases). In other words, "[p]urchasers of an allegedly defective product have no legally

recognizable claim where the alleged defect has not manifested itself in the product they own."

*Id.* (citing *Hubbard v. GMC*, No. 95-CV-4362, 1996 WL 274018, at *3 (S.D.N.Y. May 22,

1996)).

"'Although the product [at issue] itself is the best and most conclusive proof,' . . . where

the product is missing or no longer exists, the manufacturer's identity may be shown by circumstantial evidence." *Paniagua v. Walter Kiddle Portable Equip., Inc.*, 183 F. Supp. 3d 473, 484 (S.D.N.Y. 2016) (quoting *Healey v. Firestone Tire & Rubber Co.*, 87 N.Y.2d 596, 601 (1996)).  However, the circumstantial evidence must establish that it is reasonably probable – not merely possible or evenly balanced – that the defendant was the manufacturer of the defective product.  *See Healey*, 87 N.Y.2d at 601-02.  Evidence cannot be speculative or conjectural.  *See id.* at 602.

Plaintiff Hromowyk submitted evidence that Defendant knew of the defect as early as January 2009, which was prior to Plaintiff Hromowyk's purchase of the vehicle in October 2009. *See* Dkt. No. 280-1 at ¶ 1; Dkt. Nos. 293-5, 295-6.  However, Plaintiff Hromowyk cannot establish that the alleged defect manifested on his vehicle.  Plaintiff Hromowyk is unable to show that the TPMS units in his possession are the original valves or that they suffered any defect.  *See* Dkt. No. 280-6 at 16-17.  In raising the causation and injury issue, Defendant questions whether the TPMS units removed from Plaintiff Hromowyk's vehicle were, in fact, the original TPMS units installed by Defendant.  *See id.* at 17.  Therefore, Defendant argues, causation to that injury is cut off because Plaintiff Hromowyk is unable to prove that the allegedly defective TPMS units were manufactured and installed by Defendant.  *See id.*  Specifically, Defendant points to a notation on an invoice from when Plaintiff Hromowyk replaced all four of his tires in 2013, which states that new tire valves were installed.  *See* Dkt. No. 280-3 at 3.  Defendant argues that Plaintiff Hromowyk cannot prove that the original valves suffered from the alleged defect.  *See id.* at 17. Plaintiff Hromowyk dismisses this argument as speculative, and claims that the valve stems in his possession are the originals.  *See* Dkt. No. 295-1 at 26.  Plaintiff Hromowyk further argues that, based on the testimony of the owner of the mechanic shop, the notation cited to by Defendant

does not definitively prove that the original TPMS units were removed when Plaintiff Hromowyk purchased new tires.  *See id.*

It is uncontested that Plaintiff Hromowyk replaced all four of his tires at Brownie's Auto Care in February 2013.  *See* Dkt. No. 280-1 at ¶ 11.  Plaintiff Hromowyk did not watch any part of the service performed on his vehicle on that date.  *See id.* at ¶ 13.  On the invoice from that service, there is a notation which states "tire price includes mounting, balance, new valve stem, and disposal of old tire and free flat repairs."  *See* Dkt. No. 280-3 at 2.  When asked whether the notation leads him to believe that the valve stem was replaced, the owner of Brownie's Auto Care testified that it did not.  *See* Dkt. No. 295-7 at 34.  The owner explained that the notation was automatically applied to every invoice when a customer purchased new tires as a carry-over from a time when there were fewer problems with TPMS units.  *See id.* at 32.  What would actually occur, explained the owner, is that the cost of the TPMS unit would be reflected on the invoice as a separate charge.  *See id.* at 33-34.  Because there was no separate charge for TPMS units, the owner testified that it was unlikely that Plaintiff Hromowyk's TPMS units were replaced in February 2013.  Further, Plaintiff Hromowyk claims that the parts removed from his car have "DAIMLERCHRYSLER" inscribed upon them, and that this notation indicates they are Defendant's parts.

Regardless, even if the Court were to infer that the parts removed from Plaintiff Hromowyk's car were the original TPMS units, he still could not establish manifestation of the defect.  In either event, the TPMS units were either replaced in 2013 or the last TPMS unit was removed in April 2019.  In both scenarios, Plaintiff Hromowyk cannot establish that the alleged defect actually manifested on his vehicle.  If the TPMS units were replaced in 2013, then the parts were lost before any of the events which Plaintiff Hromowyk attributes to the defective TPMS

units occurred.  Even if the valves retained by Plaintiff Hromowyk were the same valves that were originally installed by Defendant, as set forth above, Plaintiff Hromowyk is barred from relying upon the TPMS units removed from his vehicle.  Here, the remaining evidence is not such that a jury could *reasonably* find for Plaintiff Hromowyk.  *See Jeffreys*, 426 F.3d at 553-52 (quotation omitted).  Because no jury could reasonably find that Plaintiff Hromowyk's vehicle suffered from the alleged defect, his claim fails.  *See In re GM LLC Ignition Switch Litig.*, 257 F. Supp. 3d at 429-30.  Accordingly, the Court grants Defendant's motion for summary judgment on this alternative ground.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-state reasons, the Court hereby

**ORDERS** that Defendant's motion for sanctions (Dkt. No. 281) is **GRANTED**; and the Court further

**ORDERS** that Defendant's motion for summary judgment (Dkt. No. 280) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff Thomas Hromowyk is **TERMINATED** from this action; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 22, 2020
       Albany, New York